**EXHIBIT B**

# Douglas L. Kutsko & Associates Co., L.P.A.

Investors Rights Litigation • FINRA Arbitration

DIRECT DIAL: 440-666-0761

May 2, 2008

**VIA FACSIMILE (312) 236-9239**
**AND UPS OVERNIGHT**

Elizabeth A. Walsh, Esq.
Case Administrator
FINRA Dispute Resolution
55 W. Monroe St., Ste 2600
Chicago, IL 60603



RE: **RESPONDENT'S STATEMENT OF ANSWER**
**Citigroup Global Markets, Inc. v. Thomas A. Banus**
**FINRA Arb: 08-00466**

Dear Panel:

Please allow this filing to constitute Respondent's Statement of Answer regarding the above captioned claim. Please also be advised that Counsel for Claimant, Mr. D. Daxton White, Esq., kindly agreed to extend Respondent's Answer date to May 2, 2008.

During or about the beginning of March, 2008, Citigroup Global Markets, Inc. (hereinafter "Claimant"), filed a Statement of Claim alleging that its former employee, Thomas A. Banus (hereinafter Respondent), voluntarily signed a promissory noted upon his hiring in 2004, tendering to him the sum of $45,675.36, to be paid back in seven (7) equal installments of $6,525.05. The reasons for the loan to the Respondent are not explained. In September of 2006, the Respondent resigned from Claimant's employ due to business related differences. Claimant alleges that, pursuant to the terms of the subject loan terms, the entire unpaid amount, plus interest, then became immediately due. They also claim that an alleged balance of $39,150.31 is in default and is the subject of this claim.

## RESPONDENT'S STATEMENT OF FACTS AND ANSWER:

First, it is not in dispute that the Respondent executed the loan agreement as alleged. However, the Claimant can claim no losses as it is currently withholding CAP wage contributions owed to the Respondent in an amount exceeding that claimed in their Prayer. Following the commencement of Respondent's employment with the Claimant, Respondent was enrolled in Claimant's Capital Accumulation Program (CAP). This program is an incentive and retention award program designed to increase employee stock ownership. Restricted/deferred shares of Citigroup common stock are awarded to employees and are subject to vesting requirements and one's continuous employment with the company. (See attached CAP Statement; "Exhibit A") Prior to leaving the employ of the Claimant, Respondent had contributed to this program, from his wages earned, in an amount approximately equaling $80,000.00. (Exhibit A) Despite a responsive letter from Respondent, dated September 29, 2006, (See attached Respondent's Letter; "Exhibit B") explaining what he is owed, the Claimant has failed to either return said funds or offset said contributions against the amount sought in this claim.

## LIST OF DEFENSES:

1. The claims are barred as there are no damages.
2. The contract at issue is an adhesion contract.
3. The contract at issue lacks consideration.
4. Claimant failed to mitigate any ongoing lost interest by not immediately offsetting the alleged debt with monies owed to the Respondent per the terms of the agreement.
5. Claimant failed to mitigate and is not entitled to the costs of litigation and/or attorney's fees as it could have immediately offset the alleged debt with monies owed to the Respondent per the terms of the agreement.

Based upon the above, the Respondent asks that this claim be dismissed for lack of damages and that any claim for accrued interest, costs and/or attorney's fees be dismissed as said expenses were avoidable pursuant to Section 7 of the subject Promissory Note (Claimant's Exhibit A). Also, it is the Respondent's intention to file a counterclaim in this case for the difference, or remaining amount, of his CAP contributions.

Thank you for your time and attention to this matter.

Very truly yours,

Douglas A. Katsko
Counsel for the Respondent

cc: D. Daxton White, Esq.
Kane & Fischer, LTD.
208 S. La Salle Street, Suite 1800
Chicago, Illinois 60604
(312) 422-7217 Fax
and UPS Overnight
Counsel for Claimant

## CERTIFICATE OF SERVICE

A true and exact copy of Respondent's Statement of Answer was sent via Facsimile and UPS Overnight Mail to the following on this ___22nd___ day of May, 2008:

Elizabeth A. Walsh, Esq.
Case Administrator
FINRA Dispute Resolution
55 W. Monroe St., Ste 2600
Chicago, IL 60603

and

D. Daxton White, Esq.
Kane & Fischer, LTD.
208 S. La Salle Street, Suite 1800
Chicago, Illinois 60604

_____
DOUGLAS A. KUTSKO
Counsel for Respondent

<mark>Total Comp @ Citigroup | Capital Accumulation Programs (CAP)</mark> <mark>Page 1 of 2</mark>

*CITIGRP ("C") PRICE ON 10-13-06 @ 2:52 p.m. 50.92*





- Home
- A personal view of your compensation and benefits
- Annual compensation
  - Financial Advisor Summary
- Beyond annual compensation
  - **Capital Accumulation Programs (CAP)**
  - Restricted/Deferred Stock Programs
  - 401(k) plan
  - Pension plan
- Health and welfare benefits
  - Medical, dental, and vision
  - Spending accounts
  - Life/AD&D
  - Disability benefits
- Work/life benefits
- Total potential value
  - Calculate the possibilities
- Log off



as of the valuation date 07/31/2006 (closing stock price was $ 48.31)

# capital accumulation programs (CAP)

Capital Accumulation Programs are incentive and retention award programs designed to increase employee stock ownership. Restricted/deferred shares of Citigroup common stock are awarded to employees. CAP shares are subject to vesting requirements and your continuous employment with Company. Your CAP awards are shown below.

Total basic value of unvested shares at award date[3]    $7

Total value as of July 31, 2006    $10

Model the potential value of your CAP shares at various hypothetical Citigroup stock prices. Review historical Citigroup stock performance:

- Interactive Stock Price Chart
- Historical Price Lookup
- Investor Relations Web site

## calculate the possibilities

Replace the current stock price with a hypothetical stock price:

`48.31` [CALCULATE] [RESET]

| Award date | Original shares awarded[1] | Award price | No. of unvested shares | Basic value of unvested shares at award date[3] | Value at award date[4] | Value of unvested shares if Citigroup stock price is $48.31 | Cu ve |
|---|---|---|---|---|---|---|---|
| **Capital Accumulation Programs (CAP)[2]** | | | | | | | |
| 07/01/2006 | 561.97 | 35.9588 | 561.97 | $20,207.77 | $26,943.69 | $27,148.77 | 07 |
| 01/02/2006 | 746.69 | 34.4563 | 746.69 | $25,728.17 | $34,304.23 | $36,072.59 | 01 |
| 07/01/2005 | 947.98 | 35.2513 | 947.98 | $33,417.53 | $44,556.71 | $45,796.91 | 07 |
| CAP Total | | | | $79,353.47 | $105,804.63 | $109,018.27 | |
| Total | | | | $79,353.47 | $105,804.63 | $109,018.27 | |

[1] Where applicable, original number of restricted/deferred shares was reduced in exchange for options.

[2] CAP includes Core CAP awards. Award price includes benefit of 25% discount, if applicable. Awards do not include

**Respondent's A**

<mark>https://www.totalcomponline.com/tc/beyanncomp/cap.cfm</mark> <mark>?/6/2006</mark>

value of option elections made under the CAP award. CAP awards elected as options are valued on the stock option program page.

[3] For Capital Accumulation Program awards, this represents the number of unvested restricted or deferred shares (after any stock option election) multiplied by the discount price, if applicable.

[4] Represents number of restricted or deferred shares (after any stock option election) multiplied by the stock price. For Capital Accumulation Program awards, this is the non-discounted stock price.

[5] The date shown is the next vesting date as of the valuation date. Any changes to this date as a result of extensions a not shown. If your award has a graded vesting schedule, a percentage of the total award displayed vests each year du the award's vesting period.

Read the assumptions used to calculate these values.

Numbers that result from modeling a stock price are only projections. Modeled amounts are hypoth in no way represent actual value you may receive.

citigroup

Disclaimer | Data privacy policy
Copyright © 2006 Citigroup

29 September 2006

<u>Via Overnight Mail</u>

Jose Martinez
Citigroup
77 Water Street, 8th Floor
New York, NY 10005

*Re: Letter, dated 22 September 2006, Demanding Payment of $39,150.30*

Dear Mr. Martinez:

In response to the referenced demand letter, it is my position, after conferring with legal counsel, that Citigroup Global Markets, Inc. ("Citigroup") is owed **nothing** (zero) due to the fact that Citigroup currently possesses more than enough of my monetary assets to satisfy the *alleged* debt. This is so because of the following undisputable facts:

Citigroup currently has, on account, <u>**over $80,000.00**</u> of my money (more than twice the amount demanded) in its *Voluntary* CAP Program, as the result of my <u>voluntary</u> contributions *alone* from my gross pay at the contribution rate of 25%, the maximum contribution rate available. Also, given the fact that this contribution amount is invested in Citigroup stock, it can be established that not only does Citigroup indeed currently possess the contributed sum of greater than $80,000.00, but also that said contributed sum is prudently invested and shall likely sizably increase with the price of Citigroup stock. Upon my resignation, the $80,000.00 remains under the ownership and control of Citigroup without my contribution amount ever being returned to me.

Citigroup is in current possession and control of **over $47,000.00** of my restricted Citigroup stock (almost $8,000.00 more than the amount demanded), which also remains under the ownership and control of Citigroup, as a result of my resignation.

The Note, in question, is a "forgivable" Note, and is construed to benefit only Citigroup. Moreover, said Note contains only one signature except for the Notary Public's signature and, in no way, discusses what intended promise or promises that Citigroup intended to exchange in return for my *alleged* indebtedness. Therefore, on its face, said Note clearly shows that Citigroup (in no way) intended to exchange promises of any kind, an essential issue at the center of any intended contractual relationship. The fact, however, remains that Citigroup still possesses and controls more then enough of my money to satisfy its *alleged* demand.

Said Note is based on my tenure (time) employed with Citigroup. Since my start date with Citigroup was **07 September 2004**, two complete years of employment have indeed elapsed, prior to my resignation. The fact that said Note was not prepared until after that start date is not my responsibility. Therefore, the amount demanded is incorrect to begin with, specifically if said amount is based solely on said Note. The fact still remains that,

Respondent's B

regardless of the amount Citigroup demands, Citigroup still has more than enough of my money to satisfy the *alleged* demand.

Said Note amounts to a contract of adhesion, a mandatory condition of employment with Citigroup, and ultimately an indenture of service. Moreover, the Note is totally construed to favor Citigroup. I initially advised Mr. Fortner, upon starting with Citigroup, that I required **no** upfront money or payments. Mr. Fortner advised me that this is "what Citigroup will do for me; that is how Citigroup does it". Moreover, the fact that Citigroup had already employed me for almost two months prior to presenting said Note made it virtually impossible for me to decline signing said Note as part of my "total offer package" from Citigroup; not to mention that most of my clients had just transferred over to Citigroup. My departure, at the time said Note (that I was directed to sign) was presented to me, would have irrefutably jeopardized virtually all of my client relationships, and ultimately my livelihood. Citigroup was and is well aware of this fact. Moreover, the fact still remains that, regardless of the foregoing, Citigroup continues to possess and control more than enough of my money to satisfy the *alleged* demand.

My written employment contract with Citigroup constituted an at-will employment relationship between Citigroup and myself. This fact specifically makes paragraph four of said Note unconscionable, due to the fact that it accelerated payment in full should Citigroup decide to let me go "for any reason or no reason". Moreover, Mr. Fortner "brushed" the whole idea of my signing said Note aside as a "mere technicality". Furthermore, with the exception of paragraph one and the first sentence of paragraph two, no (other) paragraph was ever explained to me along with its intended meaning. This, as a result, makes the Note unconscionable in its entirety. The fact continues to remain that, regardless of the foregoing, Citigroup continues to possess and control more than enough of my money to satisfy the *alleged* demand.

In conclusion, it is and remains my position that Citigroup's demand (claim) against me is indeed invalid. Citigroup currently possesses and controls more than $130,000.00 of my money (at least $80,000.00 personally contributed by me); more that three times the amount demanded. Moreover, the issue of this contract of adhesion ("Note") is thereby moot as the alleged demand has been ***more than satisfied***. Additionally, I intend to use the full twenty (20) days to decide whether to apply to stay the arbitration. This response is, therefore, respectfully submitted.

Sincerely,


Thomas A. Banus
769 Washington Avenue
Lorain, OH 44052
(440) 342-6447