UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THOMAS A. BANUS, et al.,

                     Plaintiffs,


               -against-                                  09 Civ. 7128 (LAK)


CITIGROUP GLOBAL MARKETS, INC., et al.,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:


               Mark R. Thierman
               THIERMAN LAW FIRM

               Leon M. Greenberg

               *Attorneys for Plaintiffs*


               Sam S. Shaulson
               MORGAN, LEWIS & BOCKIUS LLP
               *Attorneys for Defendant Citigroup Global Markets, Inc.*


LEWIS A. KAPLAN, *District Judge.*

            Plaintiffs all were financial consultants for defendant Citigroup Global Markets, Inc.

("CGMI"), which did business under the Smith Barney name.  In connection with their hiring by

CGMI, each received what plaintiffs call a "signing bonus" – actually, as plaintiffs acknowledge,

2

"a forgivable loan . . . to be forgiven in equal yearly amounts over a term of seven years."[1]  If, however, a plaintiff left CGMI before the note had been fully forgiven, "the unforgiven prorated share of the remaining principle with interest [would be] due and payable immediately."[2]  Plaintiffs brought this purported class action seeking principally a declaration that the promissory notes executed by plaintiffs and others similarly situated, or at least the acceleration clauses they contain, are void or voidable.  In addition, plaintiff Banus seeks to set aside an arbitration award against him on CGMI's claim for breach of the promissory note that he signed upon going to work for CGMI.

Now before the Court are (1) CGMI's motion to dismiss the second amended complaint  on the ground that the claims asserted are subject to arbitration and, in any event, should be dismissed on the merits (a) for failure to state a claim upon which relief may be granted and (b) as barred by *res judicata* and collateral estoppel,[3] and (2) plaintiffs' motion, pursuant to Fed. R. Civ. P. 56(f), "to obtain copies of all prior FINRA[4] awards against CGMI on the issues relating to this

---

[1]

Second amended complaint ("Cpt") ¶ 10.

The paragraphs of the second amended complaint are numbered consecutively from 1 through 39 following which the next paragraph, rather than being numbered 40, instead is number 7.  The paragraphs following the second paragraph 7 then are numbered consecutively from 7 through 24.  Thus, there are two paragraphs numbered with each numeral from 7 through 24.  Unless otherwise indicated, all references to paragraphs 7 through 24 are to the first of those to appear.  References to the second paragraph 7 and following are cited "7(2d)" and so on.

[2]

*Id.*

[3]

DI 14.

[4]

"FINRA" is the acronym for the Financial Industry Regulatory Authority, which was created in 2007 by the consolidated of the National Association of Securities Dealers, Inc., and certain functions of the New York Stock Exchange.

3

lawsuit . . . and to delay a decision on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint."[5]


*Facts*

A.    *The Note and the Special Compensation Agreement*

The Court assumes the truth of well pleaded factual allegations of the second amended complaint for purposes of CGMI's motion to dismiss.

Plaintiffs are six securities brokers hired by CGMI at various offices during the six year period antedating the commencement of this action. Among the considerations in hiring them were their respective "books of business" and the hope the clients would follow them to their new employer.[6]

Each of the plaintiffs, at or about the time of his employment, was paid what plaintiffs refer to as a "signing bonus."[7] At or about the same time, each entered into a special compensation agreement (the "SCA") with and signed a promissory note (the "Note") payable to CGMI, in each case in the form annexed to the pleading.[8] The Note, which was in the amount of the so-called signing bonus, provided that the employee would pay the principal sum to CGMI in seven equal annual installments commencing on the first anniversary of the execution of the Note, but it also

---

[5]    DI 19.

[6]    *Id.* ¶ 7.

[7]    *Id.* ¶ 10.

[8]    *Id.* ¶ 11.

4

contained an acceleration clause that made the entire principal sum due upon the termination of employment "for any reason or no reason."[9] The SCA provided that the employee would be paid special compensation in the principal sum in seven equal annual installments commencing on the first anniversary of the execution of the SCA.[10]   In practical effect, then, the so-called signing bonuses were no bonuses at all.  They were compensation advances – loans.  Plaintiffs allege that one of the purposes of structuring the initial payment to them in this manner was "to ensure that the[y . . . did] not resign during the term of the agreement.[11]

Both the Note and the SCA contained broad arbitration clauses obliging the parties to arbitrate "any controversy arising out of or relating to [the relevant instrument] . . . pursuant to the constitution, by-laws, rules and regulations then in effect of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc."[12]

The second amended complaint alleges that plaintiff Banus was employed by CGMI in October 2004, received an initial payment of $45,675.36, and terminated his employment in 2006, at which point CGMI demanded the unforgiven portion of his Note with interest in the amount of $39,150.31.  "The other Plaintiffs," it asserts, "were employed under the same circumstances . . . , although possibly in different amounts than Plaintiff BANUS."[13]  The status of the other five

---

[9]

     *Id.* Ex. A, ¶¶ 1, 4.

[10]

     *Id.* Ex. B, ¶ 1.

[11]

     *Id.* ¶ 12.

[12]

     *Id.* Ex. A, ¶ 9, Ex. B, ¶ 4.

[13]

     *Id.* ¶ 17.

5

plaintiffs, however, is less clear from the second amended complaint.[14]  Plaintiffs allege that CGMI

"cease[d] its wire house brokerage business . . . thereby making it impossible for . . . several of the

named Plaintiffs . . . to perform,"[15] thus suggesting that some may have been terminated as a result

of CGMI's shutting that business but implying that others may have left earlier.  In any case, it is

silent as to whether CGMI has accelerated any of their Notes or demanded repayment.[16]

B.    *The Banus Arbitration Award*

On February 18, 2008, CGMI filed a statement of claim against Banus for breach of

the Note in which it sought recovery of the unpaid balance of $39,150.31.[17]  Banus was represented

by attorney Douglas Kutsko for almost 18 months during which he responded to the statement of

claim, engaged in discovery and the exchange of documents, prepared for the hearing, and attending

pre-hearing conferences.[18]

On or about August 10, 2009, the day prior to the hearing, attorney Thierman was

substituted on Banus' behalf.  According to the second amended complaint, Mr. Thierman appeared

---

[14]

As will appear, some additional facts are set forth in other papers that I do not consider on the motion to dismiss, but are appropriately considered for other purposes.

[15]

*Id.* ¶ 15.

[16]

CGMI has stated that all of the other named plaintiffs resigned from their employment with CGMI at various times between 2006 and 2009 and that it has sought repayment from each of them.  Simon Decl. ¶ 6.

[17]

Simon Decl. ¶ 1.

[18]

*Id.* ¶¶ 2-3 & Ex. B.

at the hearing on August 11, 2009, informed the arbitrators that he had sent the original complaint in this action (which, parenthetically, was brought only on behalf of Banus) to the Court for filing, and asked that the arbitration be stayed at least long enough for him to provide the panel with a file-stamped copy.[19]  The panel denied the request.  The hearing proceeded.  Banus argued, among other things, that his contract was one of adhesion and that it lacked consideration.[20]  The hearing concluded on August 11, 2009, and the arbitrators signed the award in favor of CGMI in the amount of $51,897.60, on August 12, 2009,[21] the day on which this action was commenced.[22]

C.    *The Alipour and Bishop Arbitrations*

CGMI has commenced arbitrations against plaintiffs Alipour and Bishop, evidently to collect on the Notes executed by them.[23]  On October 22, 2009, Alipour and Bishop moved in their

---

[19]

   Cpt. ¶ 39; *see also id.* ¶¶ 7(2d)-9(2d).

[20]

   *Id.* Ex. C, at 2.

[21]

   This consisted of the principal sum of $39,150.31, interest of $6,872.29, and fees of $5,875. *Id.* Ex. C, at 3-5.

[22]

   The complaint was received by the Court and filed on August 12, 2009.  Thus, this action was not pending at the time the arbitration hearing was held.  It is unclear whether the action had been commenced by the time the award was signed.

[23]

   Plaintiffs have submitted a purported affidavit (it is acknowledged rather than sworn before a notary and therefore not an affidavit) of Bishop that contains the statement that "[n]o one has demanded arbitration of me." Bishop Aff. [DI 24] ¶ 21. CGMI, however, has submitted a copy of a letter from plaintiffs' counsel to an arbitration panel seeking a stay of the Bishop arbitration.  MacEvoy Decl. [DI 16] ¶ 2 & Ex. B. As plaintiffs' counsel has not denied the authenticity of that letter and plaintiffs' memorandum does not dispute the existence of an arbitration by CGMI against Bishop (*see generally* Thiermann Decl. [DI 21], Att. 1), I conclude that Bishop's purported affidavit is mistaken, although the point ultimately is

7

respective arbitrations to stay those proceedings pursuant to FINRA Rule 13204 based upon the

pendency of this action.[24] The panel in the Alipour arbitration denied the motion.[25] The record does

not reveal the outcome of the stay motion in the Bishop arbitration.[26]


D.      *Plaintiffs' Claims*

This action also was commenced on August 12, 2009, the day after the Banus

arbitration hearing and the same day on which the award was entered against him.[27] The five

plaintiffs in addition to Banus were added later. They now assert four claims for relief. The first

seeks a declaration that the Note and the SCA are "an illusory contract, with lack of mutuality and

lacking . . . consideration for the[ir] executory portion[s]," and that they are unenforceable. The

second seeks to set aside the arbitration award against Banus on the grounds that (1) FINRA lacked

jurisdiction because the panel "issued an award on the exact same issues as presented by this class

action complaint" in violation of FINRA's rules, and (2) the arbitration clause is unenforceable

because "FINRA rule 12203 states in part that FINRA may pick and choose without any criteria the

---

immaterial to the disposition of these motions in any case.

24

MacEvoy Decl. [DI 16] ¶ 2 & Exs. A, B.

25

*Id.* ¶¶ 8-9.

26

After these motions were fully submitted, plaintiff Alvarez filed a motion to stay an
arbitration brought against him by CGMI. (One of the docket entries incorrectly describes
the application as one to vacate an arbitration award.) [DI 33, DI 34] As the arbitration
involving Alvarez was not mentioned in the second amended complaint or in connection
with the motions dealt with by this decision, I do not address it here.

27

There is no evidence as to whether the complaint was filed before or after the arbitrators
signed the Banus award.

issues and disputes subject to arbitration and those not."[28]  The third claims that each Note is subject

to the Truth in Lending Act ("TILA"), that the loan that each evidenced was a consumer credit

transaction, and that CGMI did not make the disclosures required by TILA.[29]  The fourth seeks

rescission on the theory that CGMI "rescinded the agreement by failing to remain solvent, by

mismanaging its company to the point that it could no longer provide the security required by each

Plaintiff's clients, and by penalizing Plaintiffs with reduced compensation because of its own

failures."[30]


*Discussion*

As both sides have submitted materials in addition to the second amended complaint,

it is important to be explicit as to the extent to which I have considered them and the purpose for

which I have done so.

First, in deciding CGMI's motion to dismiss the complaint, to the extent that motion

is based on the contention that the pleading fails to state a claim upon which relief may be granted,

I decline to consider any materials apart from the complaint and the exhibits attached to it and, where

indicated below, documents that in substance are incorporated in it be reference.[31]

---

[28]     Cpt. ¶ 12(2d).

[29]     *Id.* ¶ 15(2d) - 19(2d).

[30]     *Id.* ¶ 22(2d).

[31]     *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87,  98 (2d Cir. 2007);
*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8,
13 (2d Cir. 1989)).

9

Second, CGMI seeks dismissal on the additional grounds that (a) plaintiffs are obliged to arbitrate their claims and (b) Banus' claims in any case are barred by *res judicata* and/or collateral estoppel by virtue of the arbitration award previously rendered against him.  Plaintiffs respond to the first of these arguments by contending that their claims are not subject to arbitration because FINRA Rule 13204 contains an invalid class action waiver provision and/or forecloses the arbitral forum to them.

The effect, if any, of FINRA Rule 13204 in substance raises a question whether plaintiffs' claims are subject to a valid agreement to arbitrate, which in most circumstances is a matter for the Court's determination under Section 4 of the Federal Arbitration Act (the "FAA").[32] As in any case raising such an issue, I consider the parties' additional submissions in deciding that question, which does not go to the legal sufficiency of the second amended complaint.

A.    *The Banus Arbitration Award*

It is convenient to begin with plaintiffs' challenge to the arbitration award against Banus, as the heart of Banus' contention that the award should be set aside implicates an issue also central to CGMI's contention that the second amended complaint fails to state a claim upon which

---

The effect of considering the materials outside those mentioned in determining CGMI's attack on the legal sufficiency of plaintiffs' claims would have been to convert that motion into one for summary judgment.  FED. R. CIV. P. 12(b).  While CGMI's alternative argument that plaintiff Banus' claim should be dismissed on the ground of *res judicata* and/or collateral estoppel theoretically might require resort to materials outside the complaint, I find it unnecessary to consider that argument in view of the disposition of the motion on other grounds.  Accordingly, the motion has not been converted into one for summary judgment.

[32]

9 U.S.C. § 4; *see LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004).

relief may be granted.

The attack on the Banus arbitration award rests on the premise that FINRA Rule 13204 precluded the panel from proceeding with the hearing in view of the pendency of this class action.[33]  Accordingly, Banus argues, the arbitrators were guilty of misconduct in refusing an adjournment that would have permitted a determination by this Court as to whether this case may proceed as a class action[34] or, at least, permitted counsel to establish to the arbitrators that he actually had commenced this action.  There are at least two problems with the argument.

### 1.    The Claim of Arbitrator Misconduct

"[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[35]  While "[f]ederal courts may vacate an arbitration award if 'the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient case shown,'"[36] the arbitrators have a "tremendous amount of discretion."[37]  "Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to

---

[33]      *See* Pl. Mem. 5.

[34]      *Id.*

[35]      *Willemijn Houdstermaatschappij, B.V. v. Standard Micro. Corp.,* 103 F.3d 9, 12 (2d Cir. 1997) (citations omitted).

[36]      *Alexander Julian, Inc. v. Mimco, Inc.,* 29 Fed. Appx. 700, 702 (2d Cir. 2002) (quoting 9 U.S.C. § 10(3)).

[37]      *Id.*

evidentiary review."[38]

        In this case, the arbitration had been proceeding for 18 months without any claim by Banus that the matter was not arbitrable or that FINRA could not proceed because he was involved in a class action.  On the day before the hearing, he changed counsel.  Mr. Thierman then showed up for the hearing, told the arbitrators that he was in the process of filing a class action on Banus' behalf – it had not yet even been filed, and sought an adjournment in order to allow the lawsuit to be filed and to trigger the stay that he assumed FINRA Rule 13204 consequently would have imposed.

        The arbitrators did not exceed the capacious bounds of their discretion in denying the adjournment.  The arbitration claim had been pending for well over a year during which CGMI had been unable to collect the money it claimed that Banus owed it pursuant to the plain terms of the Note and the SCA.  The case was ready for trial.  The arbitrators were not required, particularly at that late hour, to adjourn it to allow Banus' new lawyer to file a class action in a transparent attempt to oust FINRA of its authority to proceed with the case and to frustrate further CGMI's right to a determination of its claim.  Certainly their failure to grant that adjournment did not constitute misconduct.[39]

     2.     *FINRA Rule 13204*

---

[38]

*Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 20 (2d Cir. 1997).

[39]

*See, e.g., Alexander Julian, Inc.,* 29 Fed. Appx. at 702 (no misconduct where arbitrators set the arbitration hearing dates for the exact dates one party's attorney was unavailable; party could have obtained substitute counsel).

12

There is some suggestion also in plaintiffs' papers, although not stated very clearly, that the arbitrators lacked jurisdiction in light of the imminent or actual filing of this action by virtue of FINRA Rule 13204, which provides in relevant part:

"(b)    Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(1)    a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(2)    a notice that the party will not participate in the class action or in any recovery that may result from the class action.

\*   \*   \*

"(d)    A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

•    The class certification is denied;

•    The class is decertified;

•    The member of the certified or putative class is excluded from the class by the court; or

•    The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

"This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement."

The first point to be made is that the application of Rule 13204 in the unusual circumstances of the Banus arbitration is not self evident.  The hearing was begun and completed on

August 11, 2009, before this action was commenced.[40]  While the award was signed and the action commenced on the following day, plaintiffs have offered no evidence establishing that the lawsuit was commenced before the arbitration award was signed.  There appears to be nothing in Rule 13204 that would prevent arbitrators from proceeding with a hearing or the signing of an award because the filing of a class action allegedly was intended in the near future even if the rule would have stayed the hearing and the award had the very same class action been commenced earlier.

Second, it is not clear that Rule 13204 would have blocked further proceedings in the Banus arbitration even if the lawsuit had been commenced prior to the hearing.  This is so for several reasons.

As an initial matter, Rule 13204 does not explicitly state whether it applies only where a class action has been commenced prior to the start of the arbitration or, instead, applies even where, as here, the lawsuit is commenced long after the arbitration has been pending.  Certainly one can see an argument in favor of the former interpretation, as adopting a contrary view would encourage the filing of meritless class actions on the eve of arbitration hearings for purposes of delay.  Moreover, there are some indications in language of the Rule to support the view that the Rule applies only where the class action is commenced before an arbitration is begun.  The most straightforward reading of clause (d), for example, suggests that it operates only where a member or associated person seeks to arbitrate a claim that already is a subject of a class action against a class plaintiff or member.

Next, assuming *arguendo* that Rule 13204 comes into play even where an arbitration

---

[40]   *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

is pending when a pertinent class action is commenced, the effect of the Rule would not be not self evident. Clause (b), for example, provides in relevant part that "[a]ny claim that is based upon the same facts and law, and involves the same defendants as in a . . . putative class action . . . shall not be arbitrated under the Code." This clause, assuming it were applicable at all, therefore would foreclose arbitration only if two elements co-existed: (1) the claim in the arbitration must be based on "the same facts and law" as the claim in the putative class action, and (2) the defendants in the arbitration and the putative class action must be the same.

In this case, the "claim" asserted in the Banus arbitration was CGMI's claim to recover on the Note. That claim quite plainly did not rest on "the same facts and law" as the claims asserted by Banus in the original complaint in this action.[41] Nor were the defendants the same. Banus was the defendant in the arbitration while CGMI is the defendant in the putative class action.

My object in mentioning these problems, however, is not to decide any of these issues. Rather, it is to point out that plaintiffs' premise – viz., that Rule 13204 would have prevented the arbitration from proceeding if this putative class action had been pending when the arbitration was filed or, at any rate, before the hearing took place – is not clearly correct. And that has profound implications for his position.

Plaintiffs' argument or suggestion, however it properly is characterized, ignores the fact that FINRA Rule 13413 provides that:

> "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties."

---

[41] The original complaint [DI 1] sought a declaration that the Note and the SCA were unenforceable on common law grounds, rescission of the Note, and reformation of the Note and the SCA to excise the Note's acceleration clause.

It is identical to its direct antecedent, NASD Rule 10324.  And the Second Circuit squarely held in *Alliance Bernstein Investment Research & Management, Inc. v. Schaffran*,[42] that NASD Rule 10324 "clearly and unmistakably evinces the parties' intent to submit to arbitration disputes over arbitrability that turn on interpretations of provisions of the Code."[43]  Thus, the question whether FINRA Rule 13204 would have precluded, or did preclude, arbitration of CGMI's claim against Banus if the lawsuit had been filed prior to the hearing or if the arbitrators had granted an adjournment was a matter that the parties committed to the arbitrators.  It necessarily follows also that the arbitrators' refusal to grant an adjournment in order to give Banus time to commence this class action cannot have been misconduct.  The arbitrators would have been entitled to conclude that the commencement of this case prior to the hearing would not have prevented the arbitration from going forward under Rule 13204, properly construed.[44]

*  *  *

In sum, there is no basis for overturning the arbitration award rendered against Banus.

B.    *The Motion to Dismiss the Second Amended Complaint*

CGMI seeks dismissal here on the alternative grounds that plaintiffs are obliged to arbitrate their claims and that those claims in any event should be dismissed on the merits.

---

[42]    445 F.3d 121 (2d Cir. 2006).

[43]    *Id.* at 127.

[44]    As nothing in the documents of which plaintiffs request the Court to take judicial notice [DI 38] bears on the question whether the interpretation of FINRA Rule 13204 is for the arbitrators, the disposition of the request is immaterial.

1.    *Arbitrability of Plaintiffs' Claims*

When presented with a contention that a dispute before it must be resolved by arbitration, a court's role is quite limited.  It is to consider (1) "whether a valid agreement or obligation to arbitrate exits" and (2) "whether one party to the agreement has failed, neglected or refused to arbitrate."[45]  Where, however, there is a question as to whether the dispute at issue comes within the meaning of an arbitration clause and the parties have agreed that disputes as to the meaning of the arbitration clause are for the arbitrators, that question too is arbitrable.[46]

I assume at the outset that CGMI's broad brush contention that all of plaintiffs' claims in this case are arbitrable is not meant to include Banus' request that the award already rendered against him be vacated, which in any case presents a matter for determination by this Court.  This leaves the claims directed at the Note and the SCA.

Plaintiffs have failed, neglected or refused to arbitrate those claims except to the extent that Banus already has done so.[47]  This is evidenced by the commencement of this action and their contention that their claims are not arbitrable.  So the only point in dispute is whether those claims are subject to a valid agreement to arbitrate.

As mentioned previously, the Note and the SCA signed by each plaintiff contained a broad arbitration clause providing that the parties are obliged to arbitrate "any controversy arising

---

[45]

  *Shaw Group, Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120 (2d Cir. 2003).

[46]

  *Alliance Bernstein Inv. Research & Mgmt., Inc.*, 445 F.3d at 125-26 (citing *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)).

[47]

  Plaintiff Banus already has arbitrated and lost his claims that the Note was a contract of adhesion and lacked mutuality.

out of or relating to [the relevant instrument] . . . pursuant to the constitution, by-laws, rules and regulations then in effect of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc."  There can be no serious basis for questioning CGMI's contention that plaintiffs' claims to rescind, set aside or invalidate the Note and the SCA or, at least, the acceleration clause in the Note raise controversies within the language of those clauses.  Nevertheless, although plaintiffs' papers are considerably less than clear, it seems that they maintain that they are not obliged to arbitrate because (a) "the FINRA arbitration agreement contains a class action waiver provision" that is unenforceable under *In re American Express Merchants' Litig.*,[48] (b) the arbitration clause is unenforceable "because it allows the employer to pick and choose which disputes it will arbitrate,"[49] (c) the Note or, at least, its acceleration clause is invalid because it amounts to an unenforceable seven year non-competition agreement, (d) the Note was a contract of adhesion and unconscionable, and (e) the purpose of the acceleration clause has been frustrated.

I start from the proposition that:

"Challenges to the validity of arbitration agreements . . . can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g. the agreement was fraudulently induced), or on the ground that

---

[48]

554 F.3d 300 (2d Cir. 2009).

The Note and the SCA arbitration clauses require arbitration "pursuant to the constitution, by-laws, rules and regulations then in effect of the New York Stock Exchange, Inc. ['NYSE'] or the National Association of Securities Dealers, Inc.['NASD']" As FINRA was created by the consolidation of the NASD with certain operations of the NYSE, the relevance of the FINRA rules is evident.  While it appears that NYSE arbitration remains a theoretical alternative to FINRA arbitration, NYSE Rule 600A is substantially similar to FINRA Rule 13204.  Accordingly, for ease of expression, I refer only to the FINRA rule.

[49]

Pl. Mem. 13.

the illegality of one of the contract's provisions renders the whole contract invalid."[50] These are treated quite differently.  "[I]f there is a challenge to the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it. But [the FAA] does not permit the federal court to consider claims [which challenge] the contract generally."[51]

Plaintiffs' contentions that the Note or its acceleration clause amounts to an unenforceable non-competition agreement, that the Note was a contract of adhesion or unconscionable and therefore is unenforceable, and that the purpose of the Note's acceleration clause has been frustrated challenge the Note as a whole or, at least, the acceleration clause.  They do not go to the validity of the agreement to arbitrate.   In consequence, they are not properly considered by this Court unless there is an independent basis for concluding that the arbitration clause itself is invalid.  They are matters for the arbitrators.

The contention that the arbitration clause is unenforceable because it is not mutual makes little sense.  The arbitration clause in the Note provides, without relevant exception, that the parties agree "that any controversy arising out of or relating to this Note, or a default hereunder, shall be submitted to and settled by arbitration."  The comparable provision in the SCA is almost identical, but plaintiffs claim that it is not mutual because a separate provision allows the employer to seek a

---

[50]

 *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 (2006) (citation omitted).

[51]

 *In re Am. Express Merchants' Litig.,* 554 F.3d at 311(quoting *Buckeye,* 546 U.S. at 445) (in turn quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967)) (internal quotation marks omitted).

temporary restraining order in the event of a breach of the confidentiality, non-solicitation clause.[52] This however is a red herring.  The unconditional requirement of arbitration is easily harmonized with the temporary restraining order provision in view of the fact that temporary restraining orders and preliminary injunctions may be, and frequently are, granted in aid of arbitration claims where necessary to avoid irreparable injury.[53]  There is no inconsistency between the availability of provisional judicial relief and an obligation to arbitrate "any controversy arising out of or relating to" the SCA.  There accordingly is no lack of mutuality with respect to the obligation to arbitrate.

Next, plaintiffs' argument that the arbitration clauses in issue contain class action waivers[54] and therefore are unenforceable under *In re American Express* is unconvincing.

As an initial matter, a class action waiver is a provision that "forbids the parties . . . from pursuing anything other than individual claims in the arbitral forum."[55]  Neither the SCA nor the Note contains any such language. Even if they did, plaintiffs would be wrong in asserting that the Second Circuit in *In re American Express* held that "class action waivers are

---

[52]

See Pl. Mem. 13; Cpt. Ex. B, ¶ 3.

[53]

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith,* Inc., 910 F.2d 1049, 1052 (2d Cir. 1990) (re-affirming power of district court to issue injunction pending arbitration to enforce non-solicitation clause in employment agreement); *see also ContiChem LPG v. Parsons Shipping Co.,* 229 F.3d 426, 430-32 (2d Cir. 2000); *Am. Express Fin. Advisors Inc. v. Thorley,* 147 F.3d 229, 231-32 (2d Cir. 1998); *Niagra Hooker Employees Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1376-78 (2d Cir. 1991).

[54]

Pl. Mem. 9.

[55]

*See In re Am. Express Merchants' Litig.,* 554 F.3d at 302.

unenforceable."[56]  To the contrary, the court there said:

> "[W]e do not decide whether class action waiver provisions are either void or enforceable *per se.*  Rather, we are concerned solely with the class action waiver contained in the contract between the parties before us on this appeal.  We conclude that, on the record before us, the plaintiffs have adequately demonstrated that the class action waiver provisions at issue should not be enforced because enforcement of the clause would effectively preclude any action seeking to vindicate the statutory rights asserted by the plaintiffs."[57]

Plaintiffs' pretense that *American Express* created a *per se* rule of voidability is entirely untenable.

So what really is plaintiffs' argument?  They seem actually to be contending that they cannot be forced to arbitrate because FINRA Rule 13204 precludes arbitration of class action claims, that class action litigation is the only economically feasible means of asserting their positions, and that the arbitration clauses in the Note and the SCA therefore are unenforceable under *American Express.*

The first problem with this argument is the premise that FINRA Rule 13204 precludes arbitration of the plaintiffs' claims.  As noted previously in connection with the attack on the arbitration award against Banus, plaintiffs ignore FINRA Rule 13413, the effect of which is to commit to the arbitrators any questions regarding the applicability and effect of Rule 13204.  But plaintiffs would stand in no better position even if I were to assume that class litigation is foreclosed in FINRA arbitration tribunals, as plaintiffs' reading of *American Express* and the record in this case do not warrant a conclusion that the arbitration clauses in the Note and the SCA are unenforceable.

I begin with *American Express.*  The plaintiff merchants there brought a class action

---

[56]

Pl. Mem. 10.

[57]

*In re Am. Express Merchants' Litig.,* 554 F.3d at 304.

21

claiming that a provision in their card acceptance agreements with Amex that obligated them to accept both charge and credit cards issued by Amex and to pay the same discount rate on charges made on both types of cards was a tying agreement illegal under the Sherman Act. The card acceptance agreements, however, contained (1) arbitration clauses and (2) class action waiver provisions that prevented either party from (a) litigating in a court any claim as to which either party had chosen arbitration, and (b) arbitrating any claims on a class action basis.[58] Amex argued that the class action waiver provision foreclosed the plaintiffs from pursuing a federal court class action on their antitrust claims. Plaintiffs rejoined that the effect of such a conclusion would be to foreclose them from pursuing their antitrust claims altogether because their individual claims were so small and the costs of complex antitrust litigation so great that a class action was the only practical means of pursuing their claims.

The Second Circuit concluded "that Amex ha[d] brought no serious challenge to the plaintiffs' demonstration that their claims [could not] reasonably be pursued as individual actions, whether in federal court or in arbitration" and "that enforcement of the class action waiver in the Card Acceptance Agreement [would] 'flatly ensure[] that no small merchant may challenge American Express's tying arrangements under the federal antitrust laws.'"[59] It "therefore [held] that the class action waiver in the Card Acceptance Agreement [could not] be enforced in this case because to do so would grant Amex de facto immunity from antitrust liability by removing the plaintiffs' only

---

[58]     *Id.* at 306 (emphasis added).

[59]     *Id.* at 319.

22

reasonably feasible means of recovery."[60]

This case is entirely different.  Here, plaintiffs have made no attempt to show that their challenges to the Note and its acceleration clause could not be pursued individually.[61]  The amounts that CGMI seeks to recover from plaintiffs here are substantial.  They are more than sufficient to justify these plaintiffs in asserting their claims as defenses in arbitrations brought by CGMI.[62]  Indeed, Banus already has done so to the extent that he unsuccessfully contended in his arbitration that his contract was one of adhesion and that it lacked consideration.  Thus, enforcement of the arbitration clauses would not deprive plaintiffs of their ability to assert their defenses. Moreover, whereas the *American Express* court was animated in part by its concern that enforcement of the class action waiver provision in that case would defeat the important federal statutory policy underlying the antitrust laws, there is no such countervailing federal policy at issue here.  To the contrary, this is an ordinary contract dispute in which CGMI seeks to collect on promissory notes and the note obligors seek to assert alleged common law defenses to the notes.  The strong federal policy

---

[60]

 *Id.* at 320.

[61]

 There is an unsworn statement in plaintiffs' memorandum to the effect that the attorneys' fees would be at least $100,000 and that Banus owes only $45,675.36.  Pl. Mem. at 11.  But this certainly does not amount to proof even of the estimated cost of individual litigation, let alone proof that individual litigation is not economically feasible – particularly when compared to the extensive evidence submitted by the plaintiff merchants in *American Express.  Id.* at 316-17.  Moreover, it ignores the facts that (1) Banus' arbitration hearing took less than a day, and (2) plaintiffs' counsel here represents six individual plaintiffs, thus giving them some of the benefits of the economies of scale inherent in class litigation.

[62]

 *Compare, e.g., Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980) (noting that individual plaintiffs with claims for $1,006.00 likely would not be able to obtain redress at acceptable cost); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) (class action device necessary to bring lawsuit in which many individuals sustained only $70 in damages).

favoring arbitration[63] is undiminished by a competing statutory policy. Accordingly, even if FINRA Rule 13204 precluded class litigation in arbitration, I would hold that the arbitration clauses in the Note and the SCA are enforceable and that plaintiffs are bound to arbitrate their claims as defenses to CGMI's arbitration claims.

### 2.    The Sufficiency of Plaintiffs' Claims

Assuming *arguendo* that I were mistaken in concluding that plaintiffs are required to arbitrate their claims, I nevertheless would dismiss the second amended complaint for failure to state a claim upon which relief may be granted and, in the case of Banus, on the additional ground that his claims are barred by *res judicata*.

### (a)    Lack of Mutuality and Other Common Law Arguments

Plaintiffs' first claim for relief seeks a declaration that the Note and the SCA are "an illusory contract, with lack of mutuality and lacking . . . consideration for the[ir] executory portion[s]," and that they are unenforceable. The argument rests on the allegation that, as CGMI "may terminate the employment and accelerate the note at will, with no loss to itself, with or without prior notice."[63]   Plaintiffs go on to assert that the acceleration and imputed interest clauses are

---

[63]

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985); *see also, e.g., Buckeye Check Cashing v. Cardegna,* 546 U.S. 440, 443 (2006); *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111 (2001); *Shearson/Am. Exp,. Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987).

[63]

Cpt. ¶¶ 14, 27.

unconscionable and violate public policy.[64]

Plaintiffs' arguments are at war with the most basic principles of the law of contracts. To begin with, plaintiffs signed the Notes, received the substantial loan proceeds (interest free it should be noted), and had the ability to use those proceeds for any purpose they chose, not least of them being the investment of the loan proceeds to generate interest income or capital gains. There was no lack of consideration or mutuality.[65] Nor is there any problem with the acceleration clause. They are routine and have been upheld repeatedly against arguments that they are unconscionable

---

[64]

*Id.* ¶¶ 14, 27, 30.

[65]

Plaintiffs other common law arguments are even more far-fetched. Plaintiffs allege that the Note is invalid because (1) performance is impossible (Cpt. ¶¶ 15, 31, 33, 35), (2) CGMI breached its duty of good faith and fair dealing (Cpt. ¶¶ 23, 35), (3) the price term was unspecified (Cpt. ¶ 34), and (4) it is an adhesion contract (Cpt. ¶¶ 13). Each argument is completely frivolous.

First, the allegations in the complaint supporting these arguments are nothing more than naked assertions of legal defenses to contract enforcement without any factual enhancement. Such allegations are not entitled to the assumption of truth and fail to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Even if the complaint did contain some factual amplification, the arguments would fail as a matter of law. None of the doctrines plaintiffs copied from the CORBIN ON CONTRACTS table of contents would invalidate the Note here. Impossibility excuses contract performance only when the unanticipated destruction of the subject matter of the contract makes performance objectively impossible. *Kel Kim Corp v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (1987). It is insufficient that plaintiffs' repayment obligation became more burdensome because of CBMI's alleged mismanagement. *Id.* The covenant of good faith and fair dealing is an "implied obligation . . . in aid and furtherance of other terms of the agreement." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983). But CGMI already has performed its obligation under the Note – it provided plaintiffs the loan. Plaintiffs' price term argument is completely frivolous – the only alleged indefiniteness is the plaintiffs' total compensation, a subject collateral to both the Note and the SCA. Cpt. ¶ 34. Finally, an adhesion contract may be invalidated only if the drafting party used "high pressure tactics," or "deceptive language," or if the contract is unconscionable, none of which are, or likely could be, alleged here. *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168-69 (1997).

penalties.[66]  In this case, the loan proceeds were paid to the plaintiffs at the start of their employment

and were to be repaid out of their annual compensation during the continuation of that employment.

There is nothing inequitable about accelerating any unpaid balance where a broker left Smith Barney

before fully repaying the loan.[67]

(b)    *Truth in Lending Act*

The third claim for relief alleges that the loans to plaintiffs violated the TILA because

they were made without adequate or required disclosures.  The claim is baseless because TILA

---

[66]    *See, e.g., Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 54 (2d Cir. 1984) (acceleration clause in equipment rental agreement not unlawful penalty); *Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.,* 46 N.Y.2d 573, 576-78 (1979) (acceleration clause in lease upheld); *Headquarters Rest Corp. v. Reliance Vending Co.,* 133 A.D.2d 444, 446, 519 N.Y.S.2d 662, 664 (2d Dept. 1987) (acceleration clause in personal loan agreement not unconscionable).

[67]    Two of the plaintiffs have submitted affidavits that baldly assert that the purpose of the loan-signing bonus was to compensate them for the time it took their accounts to move to Smith Barney and to generate commission income for the plaintiffs to live.  Bishop Aff. [DI 24] ¶ 10; Guisti Aff. [DI 22] ¶ 8.  One claims that he was told that it was structured as a loan solely for tax purposes.  Banus Aff. [DI 23] ¶ 8.

As these assertions are not contained in the second amended complaint, I do not consider them in deciding the motion to dismiss.  But they would not alter the result even if they were considered.

The Note and the SCA are clear and unambiguous, making consideration of parol evidence inappropriate.  Even if ambiguity were present, however, any subjective assumptions or understandings that any of the plaintiffs may have had as to the CGMI's motive in giving them the advances for which they signed the notes is immaterial.  *E.g., Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.,* 505 F.2d 989, 1003 (2d Cir. 1974); *Faulkner v. Nat'l Geog. Soc.,* 452 F. Supp.2d 369, 377-78 (S.D.N.Y. 2006) (collecting cases), *aff'd,* 284 Fed. Appx. 822 (2d Cir. 2008); *Rosoff v. Mountain Laurel Ctr. for Perf. Arts,* 317 F. Supp.2d 493, 499 (S.D.N.Y. 2004).  Moreover, the plain meaning of the documents would be unaffected even if there were a tax reason for structuring the transactions as they were structured.

applies only to extensions of consumer credit,[68] not the loans at issue here.[69]  These loans are exempt also because they all exceeded $25,000,[70] and, even if TILA did apply to these loans,  any claims would be barred by the statute of limitations.[71]

### (c)    Rescission

Plaintiffs' fourth claim for relief seeks to rescind the Note.[72]  In support, plaintiffs allege that they bargained for "a national brokerage firm with a stellar reputation" and that, in fact, CGMI was not such a firm because it failed to remain solvent and was mismanaged.[73]  Their

---

[68]

15 U.S.C. § 1603 (exempting "[c]redit transactions involving extensions of credit primarily for business . . . purposes" from TILA).

[69]

The complaint alleges that "one of the purposes of structuring the signing bonus as a forgivable loan is to ensure that the employee does not resign during the term of the agreement."  Cpt. ¶ 12.

[70]

15 U.S.C. § 1603 (exempting "credit transactions . . . in which the total financed exceeds $25,000"); *see also Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 62 n.10 (2004) ("TILA does not in general apply to credit transactoins in which the total amount financed exceeds $25,000").

[71]

15 U.S.C. § 1640(e) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation.").  The only allegations about when the alleged violation occurred show that Banus signed the Note on October 21, 2004, well over one year before the initial complaint in this action was filed on August 11, 2008.

[72]

The complaint alleges that CGMI "rescinded the agreement by failing to remain solvent." Cpt. ¶ 22.

[73]

*Id.* ¶ 21.

rescission claim therefore is based on a theory of fraud in the inducement.

The rescission claim is based on fraud and therefore must comply with the requirements of FED. R. CIV. P. 9(b).[74]  The rule requires the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[75]  The complaint fails to allege any statements at all, let alone any concerning CGMI's solvency or reputation.  It fails also to identify a speaker, specify a time and place it was made, or explain why it was fraudulent.  Consequently, this aspect of the complaint is insufficient.

C.    *Plaintiffs' Rule 56(f) Motion*

Plaintiffs move, pursuant to Federal Rule 56(f), to delay a decision on this motion and for an order requiring CGMI to produce (1) "all arbitration decisions relating to the . . . Note and [SCA] . . . as well as other documents that pertain to arbitration cases that are pending or which have been requested of CGMI that relate to the . . . Note and [SCA]."[76]  The motion is not supported by any affidavit or declaration.  Its theory is CGMI failed to disclose to the Court prior arbitration awards adverse to it "while demanding that prior arbitration awards should be *res judicata* in

---

[74]

      FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[75]

      *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).

[76]

      DI 19, at 3.

subsequent proceedings."[77]

Rule 56(f) provides in relevant part:

"If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)    deny the motion;

(2)    order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3)    issue any other just order."

The first problem with plaintiffs' application is that the relevant motion before the Court is to dismiss the complaint (1) on the ground that plaintiffs' claims are subject to arbitration or, alternatively, (2) for failure to state a claim upon which relief may be granted. As there is no motion for summary judgment, and as I have declined to convert the motion into one for summary judgment by considering materials outside the complaint, Rule 56(f) does not apply.

Second, the standards governing relief under Rule 56(f) are well established:

"'[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."'"[78]

Plaintiff has not satisfied them.

---

[77]

    *Id.* at 1.

[78]

    *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir. 2003) (quoting *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir. 1999) (in turn quoting *Meloff v. N.Y. Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir. 1995))).

As an initial matter, plaintiffs filed no affidavit or declaration in support of their Rule 56(f) motion.  Indeed, when this was pointed out in defendant's answering papers, plaintiffs' arrogantly asserted in their reply brief – without citation of authority – that "filing an affidavit is not mandatory."[79]  They are mistaken.  "[T]he failure to file such an affidavit is fatal to a claim [under Rule 56(f)] . . . even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law."[80]  This independently warrants denial of the Rule 56(f) motion.

Plaintiffs would stand in no better stead if they had filed an affidavit containing what they said in their memoranda.  They have barely explained what they wish to discover –  "all arbitration decisions relating to the . . . Note and [SCA] . . . as well as other documents that pertain to arbitration cases that are pending or which have been requested of CGMI that relate to the . . . Note and [SCA]."  And they certainly have not explained how those documents might reasonably be expected to create a genuine issue of material fact, what efforts they have made to obtain them, and why they have been unsuccessful in those efforts.[81]

---

[79]

Pl. Reply Br. [DI 30] 3.

[80]

*Gurary,* 190 F.3d at 43-44. *Accord, Concourse Rehab. & Nursing Ctr.,* 249 F.3d 136, 145 n.3 (2d Cir. 2001); *Haran v. Dow Jones & Co.,* 236 F.3d 1072 (table), 2000 WL 777982, at *3 (2d Cir. 2000); *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir. 1994).

[81]

Moreover, plaintiffs' rhetoric has gotten much the better of them.  Their motion attaches a copy of an article gleaned from the Internet which, according to plaintiffs, "details that there are many, many prior FINRA arbitration awards on this very topic which are adverse to Defendant CGMI and reducing the amount CGMI can collect to as low as 20%."  [DI 19, at 1]  In fact, however, the attached article says no such thing.  It reports only that FINRA, in a single recent arbitration, awarded CGMI only somewhat less than 20 percent of the amount it sought.  [*Id.* Ex. A]  It says nothing about "many, many prior arbitration awards . . . adverse to . . . CGMI,"  Moreover, the bottom line with respect to even that

The Rule 56(f) motion is utterly without merit.

---

single arbitration is that the award to CGMI and against that broker, while presumably not what CGMI was hoping to achieve, is inconsistent with plaintiffs' argument that the Note and the SCA are unenforceable.

31

*Conclusion*

These plaintiffs all received substantial interest-free advances when they joined Smith Barney.  They all promised to repay Smith Barney over terms of years out of their compensation and to repay any unpaid balance if they left the firm "for any reason or no reason."  Having left the firm without repaying everything they owed, they brought this baseless lawsuit in what quite plainly was a studied effort to prevent collection of the debts they owed through the arbitration process.  As the lawsuit is completely without merit, it amounted to an attempt to use the judicial process for the quite improper purpose of simply stalling CGMI's effort to collect the money it is owed.

For all of the foregoing reasons, defendant's motion to dismiss the second amended complaint [DI 14] is granted to the extent that the second amended complaint is dismissed on the alternative grounds that the claims asserted therein(save the second claim for relief, which seeks vacatur of the arbitration award against Banus) are subject to arbitration and all fail to state a claim upon which relief may be granted.  Plaintiffs' Rule 56(f) motion [DI 19] is denied in all respects.

SO ORDERED.

Dated:        April 23, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)