UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THOMAS A. BANUS, et al.,

                     Plaintiffs,


             -against-                                09 Civ. 7128 (LAK)


CITIGROUP GLOBAL MARKETS, INC., et al.,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


           Appearances:


                            Mark R. Thierman
                            THIERMAN LAW FIRM

                            Leon Greenberg

                            *Attorneys for Plaintiffs*


                            Sam S. Shaulson
                            Melissa R. Kelly
                            MORGAN, LEWIS & BOCKIUS LLP
                            *Attorneys for Defendant Citigroup Global Markets, Inc.*


LEWIS A. KAPLAN, *District Judge*.

           Plaintiffs all were financial consultants for defendant Citigroup Global Markets, Inc.

("CGMI"), which did business under the Smith Barney name.  In connection with their hiring by

CGMI, each received what plaintiffs call a "signing bonus" – actually, as plaintiffs acknowledge,

"a forgivable loan . . . to be forgiven in equal yearly amounts over a term of seven years."[1]  If, however, a plaintiff left CGMI before the note had been fully forgiven, "the unforgiven prorated share of the remaining principle with interest [would be] due and payable immediately."[2]  Plaintiffs brought a purported class action seeking principally a declaration that the promissory notes executed by plaintiffs and other similarly situated, or at least the acceleration clauses they contain, are void or voidable.  Plaintiff Banus sought also to set aside an arbitration award against him on CGMI's claim for breach of the promissory note that he signed upon going to work for CGMI.  The Court granted CGMI's motion to dismiss the second amended complaint.[3]

Now before the Court is CGMI's motion seeking attorneys' fees.  The court assumes familiarity with its previous opinion.

*Facts*

A.    *The Note and the Special Compensation Agreement*

Plaintiffs are six securities brokers hired by CGMI at various offices during the six-

---

[1]

Second amended complaint ("Cpt.") ¶ 10.

The paragraphs of the second amended complaint are numbered consecutively from 1 through 39 following which the next paragraph, rather than being numbered 40, instead is numbered 7.  The paragraphs following the second paragraph 7 then are numbered consecutively from 7 through 24.  Thus, there are two paragraphs numbered with each numeral from 7 through 24.  Unless otherwise indicated, all references to paragraphs 7 through 24 are to the first of those to appear.  References to the second paragraph 7 and following are cited "7(2d)" and so on.

[2]

*Id.*

[3]

*Banus v. Citigroup Global Mkts., Inc.*, No. 09 Civ. 7128 (LAK), 2010 WL 1643780 (S.D.N.Y. Apr 23, 2010) (hereinafter *Banus I*).

month period antedating the commencement of the dismissed class action.  Among the considerations in hiring them were their respective "books of business" and the hope the clients would follow them to their new employer.[4]

Each of the plaintiffs, at or about the time of his employment, was paid what plaintiffs refer to as a "signing bonus."[5]  At or about the same time, each entered into a special compensation agreement (the "SCA") with and signed a promissory note (the "Note") payable to CGMI.[6]  The Note, which was in the amount of the so-called signing bonus, provided that the employee would repay the principal sum to CGMI in seven equal annual installments commencing on the first anniversary of the execution of the Note, but it contained an acceleration clause that made the entire principal sum due upon the termination of employment "for any reason or no reason."[7] The SCA provided that the employee would be paid special compensation in the principal sum in seven equal annual installments commencing on the first anniversary of the execution of the SCA.[8]   In practical effect, then, the so-called signing bonuses were not bonuses at all.  They were compensation advances – loans.  Plaintiffs alleged that one of the purposes of structuring the initial payment to them in this manner was "to

---

[4]

   Cpt. ¶ 7.

[5]

   *Id.* ¶ 10.

[6]

   *Id.* ¶ 11.

[7]

   *Id.* Ex. A, ¶¶ 1, 4.

[8]

   *Id.* Ex. B, ¶ 1.

4

ensure that the[y . . . did] not resign during the term of the agreement."[9]

Both the Note and the SCA contained broad arbitration clauses obliging the parties to arbitrate "any controversy arising out of or relating to [the relevant instrument] . . . pursuant to the constitution, by-laws, rules and regulations then in effect of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc."[10]

The second amended complaint alleged that plaintiff Banus was employed by CGMI in October 2004, received an initial payment of $45,675.36, and terminated his employment in 2006, at which point CGMI demanded payment of the unforgiven portion of his Note with interest in the amount of $39,150.31. The status of the other five plaintiffs, however, was less clear from the second amended complaint. It was silent as to whether CGMI had accelerated any of their Notes or demanded repayment.[11]

B.    *The Banus Arbitration Award*

On February 18, 2008, CGMI filed a statement of claim against Banus for breach of the Note in which it sought recovery of the unpaid balance of $39,150.31.[12]  Banus was represented

---

[9]
  *Id.* ¶ 12.

[10]
  *Id.* Ex. A, ¶ 9, Ex. B, ¶ 4.

[11]
  CGMI stated that all of the other named plaintiffs resigned from their employment with CGMI at various times between 2006 and 2009 and that it sought repayment from each of them.  Simon Decl. [DI 17] ¶ 6.

[12]
  *Id.* ¶ 1.

by attorney Douglas Kutsko for almost 18 months during which he responded to the statement of claim, engaged in discovery and the exchange of documents, prepared for the hearing, and attended pre-hearing conferences.[13]  During this period, Banus never claimed that the matter was not arbitrable or that the arbitration could not proceed because Banus was involved in a class action.

On or about August 10, 2009, the day prior to the hearing, Banus changed counsel. Attorney Thierman was substituted on Banus's behalf.  According to the second amended complaint, Mr. Thierman appeared at the hearing on August 11, 2009, informed the arbitrators that he had sent the original complaint in this action (which was brought only on behalf of Banus) to this Court for filing, and asked that the arbitration be stayed at least long enough for him to provide the panel with a file-stamped copy.[14]  The complaint had not yet been filed.  Mr. Thierman sought an adjournment to allow the lawsuit to be filed, in the hope that such a filing would trigger a stay pursuant to FINRA Rule 13204.[15]

The panel denied the requests.  The hearing proceeded.  Banus argued,[16] among other things, that his contract was one of adhesion and that it lacked consideration.[17]  The hearing concluded

---

[13]

   *Id.* ¶¶ 2-3, Ex. B.

[14]

   Cpt. ¶ 39; *see also id.* ¶¶ 7(2d)-9(2d).

[15]

   "FINRA" is the acronym for the Financial Industry Regulatory Authority, which was created in 2007 by the consolidation of the National Association of Securities Dealers, Inc., and certain functions of the New York Stock Exchange.

[16]

   In all cases, references to claims or arguments made by Banus and the other plaintiffs refer to claims pursued or arguments advanced by Mr. Thierman.

[17]

   Cpt. Ex. C, at 2.

6

on August 11, 2009, and the arbitrators signed the award in favor of CGMI in the amount of

$51,897.60, on August 12, 2009,[18] the day on which this action was commenced.[19]


C.      *The Alipour and Bishop Arbitrations*

          CGMI commenced arbitrations against plaintiffs Alipour and Bishop, evidently to

collect on the Notes executed by them.[20]  On October 22, 2009, Alipour and Bishop moved in their

respective arbitrations to stay those proceedings pursuant to FINRA Rule 13204 based upon the

pendency of this action.[21]  The panel in the Alipour arbitration denied the motion.[22]  The record does

not reveal the outcome of the stay motion in the Bishop arbitration.

---------------------------------

[18]

          This consisted of the principal sum of $39,150.31, interest of $6,872.29, and fees of $5,875.
          *Id.* Ex. C, at 3-5.

[19]

          The complaint was received by the Court and filed on August 12, 2009.  Thus, this action
          was not pending at the time the arbitration hearing was held.  It is unclear whether the action
          had been commenced by the time the award was signed.

[20]

          Plaintiffs submitted a purported affidavit (it was acknowledged rather than sworn before a
          notary and therefore not an affidavit) of Bishop that contains the statement that "[n]o one has
          demanded arbitration of me."  Bishop Aff. [DI 24] ¶ 21. CGMI, however, submitted a copy
          of a letter from plaintiffs' counsel to an arbitration panel seeking a stay of the Bishop
          arbitration.  MacEvoy Decl. [DI 16] ¶ 2, Ex. B.  As plaintiffs' counsel did not deny the
          authenticity of that letter and plaintiffs' memorandum did not dispute the existence of an
          arbitration by CGMI against Bishop (*see generally* Thierman Decl. [DI 21], Att. 1), the
          Court concluded that Bishop's purported affidavit is mistaken, although the point ultimately
          was immaterial.

[21]

          MacEvoy Decl. [DI 16] ¶ 2 & Exs. A, B.

[22]

          *Id.* ¶¶ 8-9.

D.      *Plaintiffs' Claims*

            The dismissed class action was commenced on August 12, 2009, the day after the

Banus arbitration hearing and the same day on which the award was entered against him.[23]  The five

plaintiffs in addition to Banus were added later.  They asserted four claims for relief:  (1) declaration

that the Note and the SCA are "an illusory contract, with lack of mutuality and lacking . . .

consideration . . . ," and that they are unenforceable, (2) set aside of the arbitration award against

Banus, (3) declaration that each Note is subject to the Truth in Lending Act ("TILA") as a consumer

credit transaction and that CGMI did not make the disclosures required by TILA, and (4) rescission

on the theory that CGMI failed to remain solvent and penalized the plaintiffs with reduced

compensation as a result.

            On April 23, 2010, the Court granted CGMI's motion to dismiss the second amended

complaint because the claims were subject to arbitration and plaintiffs all failed to state a claim upon

which relief may be granted.  None of the plaintiffs' claims regarding the enforceability of the Note

was related to the validity of the agreement to arbitrate, the only type of claim that the Court properly

could have addressed.[24]  The Court found also that there was no basis for overturning the arbitration

award rendered against Banus.[25]  Finally, the Court denied plaintiffs' Rule 56(f) motion in all respects.

----

[23]

            There is no evidence as to whether the complaint was filed before or after the arbitrators
            signed the Banus award.

[24]

            *Banus I*, 2010 WL 1643780 at *8.

[25]

            *Id.* at *6.

*Discussion*

CGMI now seeks to recover costs and attorneys' fees that CGMI incurred in defending the action before this Court. It contends that the plaintiffs needlessly multiplied the proceedings, brought a frivolous class action lawsuit, and took these actions with the purpose of delaying their loan repayment.[26] Plaintiffs essentially reargue the merits of their previously dismissed claims and assert that arbitration is the appropriate forum for the fee application if CGMI is correct that arbitration is the exclusive forum for resolving disputes related to the Note and SCA.[27]

A.   *District Court's Authority to Award Attorneys' Fees*

A court has discretion to award attorneys' fees pursuant to statutory authority and its inherent powers. Although the Court previously concluded that arbitration, as specified in the contracts, is the most appropriate forum to settle disputes related to the agreements, that conclusion does not prevent the Court from deciding this motion.

---

[26]
    CGMI Mem. at 2.

[27]
    Banus Mem. at 2.

Additionally, plaintiffs attempt to justify their prior arguments based on Supreme Court opinions that had not been issued at the time the motion to dismiss in this action was decided. Even if those opinions supported the plaintiffs' position (and it is not entirely clear to this Court that they do), merely citing those opinions does not support a conclusion that plaintiffs' arguments were well-founded or in good faith at the time that they were made.

1.      *Statutory Authority*

Section 1927 of the Judicial Code authorizes a district court to require that an attorney "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" as a result of the attorney's unreasonable and vexatious multiplication of proceedings.[28]  Such sanctions, however, may be imposed "only when there is a finding of conduct constituting or akin to bad faith."[29]  An award under Section 1927 may be appropriate when actions by the attorney are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."[30]  Moreover, a court may infer bad faith "from the clear lack of merit" of the attorney's claims.[31]

2.      *Inherent Power*

The Supreme Court has recognized the district courts' discretion to impose costs and fees against attorneys or parties pursuant to their inherent equitable powers.[32]  Before awarding costs or fees pursuant to its inherent powers, a district court in the Second Circuit must make factual findings as if it were imposing sanctions under Section 1927.  A district court " must make an explicit

---

[28]     28 U.S.C. § 1927.

[29]     *60 East 80th Street Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (citing *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)) (internal quotation marks omitted).

[30]     *Id.* (internal quotation marks omitted).

[31]     *Id.* at 117.

[32]     *Chambers v. NASCO, Inc.*, 501 U.S. 32, 48-49 (1991).

finding of bad faith" before imposing a fee award for "actions taken on behalf of a client."[33]

### 3.    Procedural Requirements

In addition to the substantive requirement of "bad faith" under both Section 1927 and the court's inherent powers, there are procedural requirements related to an award of fees or costs. The subject of the sanctions must receive both notice and an opportunity to be heard.  The notice requirement imposes an obligation to inform the subject of the sanctions of "(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."[34] The opportunity to be heard does not require a full evidentiary hearing, and being afforded the opportunity to respond by brief or oral argument may be sufficient.[35]

### B.    Plaintiffs' Rule 11 Argument

Plaintiffs assert that CGMI's motion is improper because CGMI did not file a motion under Rule 11.[36]  Plaintiffs provide no authority for this proposition.  Rule 11(b) and Section 1927

---

[33]

*United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000).

[34]

*60 East 80th Street Equities*, 218 F.3d at 117.

[35]

*Id.*

[36]

Banus Mem. at 5.

allow a court to impose sanctions on different grounds.[37]  An attorney violates Rule 11(b) by filing a pleading for an improper purpose or presenting a frivolous legal claim or facts that lack evidentiary support.[38]  An attorney violates Section 1927 by "unreasonably" and "vexatiously" multiplying legal proceedings.[39]  It is possible that a party may allege a violation of both Rule 11(b) and Section 1927 in the same proceeding, but bringing a motion only under Section 1927 does not make the motion procedurally deficient.

CGMI's motion satisfies the procedural requirements for sanctions.  Through the present motion, plaintiffs and their counsel received notice of the authority for the imposition of costs and fees and of the specific conduct at issue.  Plaintiffs have been afforded a meaningful opportunity to respond to the motion through briefing.

C.    *Lack of Merit and Bad Faith*

This lawsuit was completely without merit.  In addition, as the Court previously found, the lawsuit "amounted to an attempt to use the judicial process for the quite improper purpose of simply stalling CGMI's effort to collect the money it is owed."[40]

The plaintiffs all received the equivalent of interest-free advances that they all

---

[37]    *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 n.1 (2d Cir. 2006).

[38]    Fed.R.Civ.P. 11(b).

[39]    28 U.S.C. § 1927.

[40]    *Banus I*, 2010 WL 1643780 at *12.

promised to repay over terms of years out of their compensation and to repay any unpaid balance if they left the firm "for any reason or no reason."  The plaintiffs left the firm without fulfilling the promise to repay everything that they owed.  In such circumstances, the agreements that the plaintiffs freely  signed gave CGMI the right to pursue arbitration proceedings against the plaintiffs, as it did.

### 1.     Banus's Individual Case

In Banus's individual case, the arbitration claim had been pending for well over a year during which CGMI had been unable to collect the money it claimed that Banus owed it pursuant to the plain terms of the Note and the SCA.  Once the case was ready for an arbitration hearing,  Banus brought this baseless lawsuit.  The lawsuit quite plainly was a studied effort to oust FINRA of its authority to proceed, frustrate CGMI's right to a determination of its claim, and prevent collection through the arbitration process of the debt that Banus owed.  By filing and pursuing this class action, Banus needlessly multiplied the proceedings for improper ends.

### 2.     Enforceability Claims

Plaintiffs made baseless claims in this action.  First, they argued that the arbitration clauses in each agreement contained allegedly unenforceable class action waivers.  Neither the SCA nor the Note contained any such language.[41]  Even if they had, the Supreme Court and the Second

---

[41]     *Banus I*, 2010 WL 1643780 at *8.

Circuit had not established a *per se* rule that class action waivers were unenforceable.[42]

In any case, the plaintiffs' claims for relief in this action were at war with the most basic principles of the law of contracts.  They asserted that the Note and the SCA lacked mutuality and consideration and, as a result, were unenforceable.[43]  Plaintiffs argued also that the acceleration and imputed interest clauses were unconscionable and violated public policy.[44]  These arguments, however, failed on the basis of undisputed facts.  Plaintiffs signed the Notes, received substantial loan proceeds (interest free it should be noted), and had the ability to use those proceeds for any purpose they chose, not least of them being the investment of the loan proceeds to generate interest income or capital gains.  There was no lack of consideration or mutuality.  Nor was there any basis for their challenges to the acceleration and imputed interest clauses.  Acceleration clauses are routine and have been upheld repeatedly against arguments that they are unconscionable penalties.[45]  In this case, the

---

[42]

See *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 302 (2d Cir. 2009), *vacated*, *American Exp. Co. v. Italian Colors Restaurant*, 130 S.Ct. 2401 (2010).

The Second Circuit expressly indicated that it was not establishing a rule regarding class action waivers stating:

"[W]e do not decide whether class action waiver provisions are either void or enforceable *per se*.  Rather, we are concerned solely with the class action waiver contained in the contract between the parties before us on this appeal.  We conclude that, on the record before us, the plaintiffs have adequately demonstrated that the class action waiver provisions at issue should not be enforced because enforcement of the clause would effectively preclude any action seeking to vindicate the statutory rights asserted by the plaintiffs."  *Id.* at 304.

[43]

Cpt. ¶¶ 14, 27.

[44]

*Id.* ¶¶ 14, 27, 30.

[45]

See, e.g., *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 54 (2d Cir. 1984) (acceleration clause in equipment rental agreement not unlawful penalty); *Fifty States Mgmt.*

loan proceeds were paid to the plaintiffs at the start of their employment with CGMI and were to be repaid out of their annual compensation during the continuation of that employment. There was nothing inequitable about accelerating any unpaid balance where a broker ended his term of employment before full repaying the loan.

### 3.    Truth in Lending Act

Plaintiffs asserted that the Notes were consumer credit transactions subject to TILA and that CGMI failed to make the necessary disclosures. That assertion was without merit based on the plain language of the statute. TILA applies only to extensions of consumer credit,[46] not the type of loans at issue here. Moreover, these loans were exempt in any case because they all exceeded $25,000,[47] the statutory maximum under TILA, and even if TILA had applied to these loans, any claims would have been barred by the statute of limitations.[48]

---

*Corp. v. Pioneer Auto Parks, Inc.,* 46 N.Y.2d 573, 576-78 (1979) (acceleration clause in lease upheld); *Headquarters Rest Corp. v. Reliance Vending Co.,* 133 A.D.2d 444, 446, 519 N.Y.S.2d 662, 664 (2d Dept. 1987) (acceleration clause in personal loan agreement not unconscionable).

[46]    15 U.S.C. § 1603 (exempting "[c]redit transactions involving extensions of credit primarily for business . . ." purposes from TILA).

[47]    15 U.S.C. § 1603 (exempting "[c]redit transactions . . . in which the total financed exceeds $25,000 "); *see also Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 62 n.10 (2004) ("TILA does not in general apply to credit transactions in which the total amount financed exceeds $25,000. ").

[48]    15 U.S.C. § 1640(e) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation."). The only allegations about when the alleged violation occurred show that Banus signed the Note on October 21, 2004, well over one year before the initial complaint in this action was filed on August 11, 2008.

4.      *Common Law Contract Arguments*

Plaintiffs' common law arguments – impossibility of performance,[49] breach of duty of good faith and fair dealing,[50] unspecified price term,[51] and contract of adhesion[52] – were even more far-fetched.  Plaintiffs arguments were nothing more than conclusory legal assertions unsupported by any facts.[53]  Such allegations were not entitled to the assumption of truth and failed to state a plausible claim for relief.[54]

---

[49]     Cpt.  ¶¶ 15, 31, 33, 35.

[50]     *Id.*  ¶¶ 23, 25.

[51]     *Id.*  ¶ 34.

[52]     *Id.*  ¶ 13.

[53]     Even if the complaint did contain some factual amplification, the arguments  would fail as a matter of law.  None of the doctrines plaintiffs cited would invalidate the Note here. Impossibility excuses contract performance only when the unanticipated destruction of the subject matter of the contract makes performance objectively impossible.  *Kel Kim Corp v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (1987).   It is insufficient that plaintiffs' repayment obligation became more burdensome because of CGMI's alleged mismanagement.  *Id.*  The covenant of good faith and fair dealing is an "implied obligation . . . in aid and furtherance of other terms of the agreement."  *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983).  But CGMI already has performed its obligation under the Note – it provided plaintiffs the loan.  Plaintiffs' price term argument is completely frivolous – the only alleged indefiniteness is the plaintiffs' total compensation, a subject collateral to both the Note and the SCA.  Cpt. ¶ 34.  Finally, an adhesion contract may be invalidated only if the drafting party used "high pressure tactics," or "deceptive language," or if the contract is unconscionable, none of which are, or likely could be, alleged  here. *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168-69 (1997).

[54]     *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

*Conclusion*

Mr. Thierman filed this action for the improper purpose of delaying pending arbitration proceedings.   There is no evidence to support a finding that the plaintiffs, as lay persons, were primarily responsible for the strategy and resulting arguments.   Mr. Thierman pursued claims that either should have been decided in arbitration*,* as the plaintiffs' contracts specified, or were completely without merit.   The arguments were so baseless that the Court can conclude only that they were made in bad faith.   For all of the foregoing reasons, defendants' motion seeking attorneys' fees is granted to the extent that Mr. Thierman shall pay appropriate defense costs in an amount that will be fixed on motion made by the defendants within 21 days of this order.

SO ORDERED.

Dated:        December 20, 2010

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)