UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THOMAS A. BANUS, BRENT BISHOP,                      :
NAVID ALIPOUR, ANIBAL DRELICHMAN,
GUIDO ALVAREZ, and ROBERT GUISTI,                  :        09 Civ. 7128 (LAK) (DF)
on behalf of themselves and all others similarly
situated,                                          :        **REPORT AND**
                                                            **RECOMMENDATION**
                        Plaintiffs,                :        **(CORRECTED)**

         -against-                                 :

CITIGROUP GLOBAL MARKETS, Inc., Does               :
1-50, Inclusive,
                                                   :
                        Defendants.
---------------------------------------------------------------X

**TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:**

        Currently before this Court for a report and recommendation is a fee application by

defendant Citigroup Global Markets, Inc. ("CGMI").  (Dkt. 49.)  CGMI submitted this

application following the Court's Order of December 20, 2010 (Dkt. 48 (Kaplan, J.)), in which

the Court determined that, under 28 U.S.C. § 1927 and the Court's inherent authority, CGMI was

entitled to recover its attorneys' fees and costs from Plaintiffs' counsel, Mark R. Thierman, Esq.

("Thierman"), as a result of Thierman's bad faith pursuit of meritless claims in this action.

        While the sum now requested by CGMI is quite high (over $365,000), this Court finds

that, for the most part, CGMI's application is well supported, and that the fees and costs sought

are reasonable, in light of the significant work that was needed to meet each of Plaintiffs' several

baseless claims and arguments and to respond, in general, to Plaintiffs' contentious and

scattershot approach to litigation.  In a few instances, however, this Court finds that the rates

charged for those on CGMI's litigation team (particularly for legal assistants and non-

professional staff) are higher than rates that have been judicially approved for the relevant

markets, and therefore should be reduced.  Further, a number of the billing entries made by

CGMI's counsel – particularly regarding their drafting of motions and reply papers – are overly

vague, making it difficult for this Court to discern whether the recorded time, which was

substantial, was excessive for the tasks in question.  For these reasons, and as set forth further

below, I recommend that CGMI's requested fees and costs be somewhat reduced, and that

Thierman be ordered to pay to CGMI a total of $279,963.22 in fees and $14,928.20 in costs.

## <u>BACKGROUND</u>

The factual background of this matter is summarized in detail in two earlier opinions of

the Court:  a Memorandum Opinion, dated April 23, 2010 (Dkt. 39; *Banus v. Citigroup Global*

*Markets, Inc.*, No. 09 Civ. 7128 (LAK), 2010 WL 1643780 (S.D.N.Y. Apr. 23, 2010)

("*Banus* I"), and the Memorandum Opinion, dated Dec. 20, 2010, referred to above (Dkt. 48;

*Banus v. Citigroup Global Markets, Inc.*, 757 F. Supp. 2d 394 (S.D.N.Y. 2010) ("*Banus* II").

Familiarity with both of these opinions is assumed, and thus this Court will not set out the

factual and procedural history of the action here.  Nor, despite Plaintiffs' efforts to persuade this

Court to reevaluate the merits of Plaintiffs' claims and the propriety of awarding sanctions in this

case,[1] will this Court engage in any such exercise, as these matters were previously addressed

and decided.

---

[1] In their opposition papers, Plaintiffs argue, for example, that the Court lacks jurisdiction under 28 U.S.C. § 1927 to award fees for the conduct of counsel in connection with arbitration or for then filing a federal complaint.  (Plaintiffs' Opposition To Defendant's Motion For Attorneys Fees ("Plaintiff's Opp."), dated Jan. 24, 2011 (Dkt. 52), at 11.)  Plaintiffs also argue that neither Plaintiffs nor their counsel did anything in this case to "multiply *these* proceedings" (emphasis in original) and that the sanction imposed by the Court raises constitutional concerns.  (*Id.*, at 12, 14.)

The only question before this Court's is the reasonableness of CGMI's requested $366,956.71 in attorneys' fees and costs, for its time and expense spent: (1) preparing its memorandum of law in support of its motion to dismiss; (2) preparing its reply memorandum, which addressed new claims and arguments made by Plaintiffs in their opposition; (3) responding to Plaintiffs' separate Rule 56(f) motion; (4) responding to plaintiff Alvarez's motions to stay arbitration and to vacate an arbitration award; (5) preparing its motion for attorneys' fees as a sanction; (6) preparing its reply memorandum in further support of that motion; (7) preparing the instant fee application; (8) preparing its reply in further support of the fee application; and (9) preparing its response to Plaintiff's objections to new evidence. Any relevant facts, claims, and procedural history are considered below only to the extent that they bear upon the arguments made by the parties regarding the reasonableness of the amounts sought by CGMI for performing these tasks.

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). In determining appropriate fees, the Court begins by multiplying an attorney's reasonable hours by a reasonable hourly rate for the services performed, so as to determine a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 118-21 (2d Cir. 2007). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984); *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, at *8 (S.D.N.Y. Sept. 29, 2009). To that end, the fee application must be supported by contemporaneous time

records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  The so-called "*Johnson* factors"[2] and others should be considered by the Court in determining whether a proposed hourly rate is reasonable in the particular circumstances presented.  *See Arbor Hill,* 493 F.3d at 112 (directing district courts, in determining reasonable hourly rate, to consider factors such as "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono* . . ., and other returns (such as reputation, etc.) the attorney expected from the representation"); *see also id.* at 114 (listing the 12 *Johnson* factors).  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, Nos. 96 Civ. 0805, 96 Civ. 2262 (RLC), 1997 WL 691427, at *6 (S.D.N.Y. Nov. 4, 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates

---

[2] In *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), the court identified 12 factors as relevant to determining reasonable attorneys' fees:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 717-19 (quotation marks omitted), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92-93 (1989).

sought, *Miele v. N.Y. State Teamsters Conference Pension & Ret.,* 831 F.2d 407, 409 (2d Cir. 1987).

In *Arbor Hill,* the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 493 F.3d at 117-18. In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 117-18. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). A reduction is also appropriate where the proffered attorney time records are inadequate to enable the Court to determine the reasonableness of the work performed or the time expended. *See Hensley*, 461 U.S. at 433. In determining whether an excessive amount of time was expended on the matter, the Court may also consider the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436. Where an evaluation of every time entry is impractical, the Court may apply percentage cuts "as a practical means of trimming fat" from the application. *Carey*, 711 F.2d at 1146.

As for costs, "'[a]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989)).  Expenses such as photocopying, research, and telephone costs "are the sort of expenses that may ordinarily be recovered" as part of a fee award, and need not be treated as "overhead expenses."  *LeBlanc-Sternberg*, 143 F.3d at 763 (citing cases); *see also Gateway Bank, F.S.B. v. Ideal Mortg. Bankers, Ltd.*, CV 10-334 (JS) (ETB), 2010 U.S. Dist. LEXIS 92135, at *14-15 (E.D.N.Y. June 8, 2010) (Report & Recommendation) ("costs for photocopying, telephone calls, legal research, filing fees, service of process, postage, and air courier services . . . are routinely recoverable" as part of a fee award (citing cases)), *adopted by* 2010 U.S. Dist. LEXIS 82097 (E.D.N.Y. Aug. 12, 2010);  *Union of Orthodox Jewish Congregations of America v. American Food & Beverage Inc.*, 704  F.Supp. 2d 288, 293 (S.D.N.Y. 2010) (awarding costs for filing fees, process server fees, travel expenses, and expense reimbursements); *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS), 2011 WL 2732563, *10 (S.D.N.Y. July 8, 2011) (awarding travel costs related to litigation).

## II.  CGMI'S APPLICATION

### A.    Reasonableness of Rates

In this employment case, involving a dispute between CGMI and certain of its former employees regarding the enforceability of loan repayment provisions in special compensation agreements the employees had entered into with the company, CGMI was represented by the law firm of Morgan Lewis & Bockius, LLP ("Morgan Lewis"), a firm experienced in labor and

employment law.[3]  According to an affidavit submitted by  Eugene Clark ("Clark"), Managing

Director of Citigroup Management Corp., a subsidiary of Citigroup Inc. ("Citigroup") (*see* n.3,

*supra*), Morgan Lewis was first selected to represent Citigroup in employment litigation through

a competitive bidding process (*see* Clark Aff., at ¶ 6).  Clark states that, as the head employment

lawyer for the businesses comprising Citigroup's Institutional Clients Group, he has been

responsible not only for supervising in-house employment lawyers, but also for reviewing bids

from outside law firms, retaining outside counsel, and negotiating hourly rates.  (*See id.,* at ¶ 1.)

According to Clark, "Citigroup has a sophisticated process for selecting law firms to work on its

matters," which includes the solicitation of bids from law firms "around the country."  (*Id.* at

¶ 2.)  Clark explains that, as part of the process by which Morgan Lewis was selected to

represent Citigroup,

> Citigroup reviewed each proposed timekeeper's individual rate and
> compared that rate to the rates of lawyers at other comparable
> firms with similar experience and law school graduation date.  The
> rate for each timekeeper was individually reviewed, individually
> negotiated (when appropriate to bring it in line with prevailing
> market rates), and individually approved by Citigroup.  In addition,
> whenever a new timekeeper [was] added to a Citigroup matter,
> Morgan Lewis, as with any other firm, [was] required to inform
> Citigroup and propose a rate for that timekeeper.  Citigroup then
> individually review[ed] the rate, individually negotiate[d] the rate
> (if appropriate), and individually approve[d] the rate.

(*Id.*, at ¶ 6.)

When the *Banus* lawsuit commenced, Morgan Lewis had already successfully bid to

represent Citigroup in other employment litigation, and Citigroup had already approved the

firm's billing rates, at an agreed 15-percent discount from the firm's standard rates.  (*Id.; see*

---

[3] *See* Affidavit of Eugene Clark in Support of Petition For Attorneys' Fees and Costs,
sworn to Feb. 14, 2011 ("Clark Aff.") (Dkt. 57), at ¶¶ 4, 9.

*also* Affidavit of Samuel S. Shaulson in Support of Motion For Attorneys' Fees and Costs, Dated Jan. 10, 2011 ("Shaulson Aff.") (Dkt. 50), at ¶ 14.)  Clark explains that, given the fact that the *Banus* lawsuit was commenced as a putative class action, seeking "to essentially invalidate the entire promissory note program that CGMI had with its financial consultants," he "immediately knew that CGMI needed to retain counsel who was expert in the financial services industry and employment class actions."  (*Id.* at ¶ 9.)  In consultation with other lawyers at Citigroup, Clark selected Shaulson and Morgan Lewis to represent CGMI in the *Banus* litigation.  (Clark Aff., at ¶ 8.)  In support of the selection, Clark states that Morgan Lewis "represent[s] many of the largest financial institutions in employment law matters, and [its attorneys] have specific expertise representing financial services institutions with respect to their promissory note arrangements with financial consultants."  (*Id.*, at ¶ 9.)

Morgan Lewis now represents that, after review of its invoices, CGMI has paid all of the legal bills at issue on this application (with the exception of the most recent bill, which had not yet become due at the date the application was filed).  (Clark Aff., ¶ 13.)

In light of all this, and given the attorney rates that have been approved in this district for similar work, CGMI argues that the rates charged by Morgan Lewis were entirely reasonable and should be accepted by the Court.  (Shaulson Aff., at ¶ 19.)  For their part, Plaintiffs contend that the rates charged by Morgan Lewis were unreasonably high.  (Plaintiff's Opp., at 11.)  Plaintiffs offer little support for their position, however, citing neither case law nor market evidence to demonstrate that the fees charged in this case were outside the range of appropriate fees charged

by similar firms, for similar work, in the relevant community.[4]  For the most part, Plaintiffs' challenge to CGMI's requested fees is unpersuasive.

### 1.    **Attorney Rates**

The Morgan Lewis attorneys who were principally responsible for this matter were located in the firm's New York City office.  The litigation team was headed by partner Samuel S. Shaulson, Esq. ("Shaulson"), who (after the negotiated 15 percent discount) billed at a rate of $606.31 per hour.  (*See* Shaulson Aff*., at ¶ 7.)  Shaulson states that he has been practicing labor and employment law on a national basis for more than 15 years.  (*See id.*, at ¶ 6.)  He graduated from the University of Pennsylvania Law School in 1993.  (*Id.*)  Considering the Shaulson's education, level of experience, the nature of the services performed, prior judicial findings regarding rates charged in the New York City market, this Court's own knowledge of prevailing rates in the community, and the fact that Shaulson's billing rate was negotiated (as well as actually paid), the Court finds his rate to be reasonable.  *See, e.g.*, *OZ Management LP v. Ozdeal Inv. Consultants, Inc.,* No. 09 Civ. 8665 (JGK) (FM), 2010 WL 5538552, *3 (S.D.N.Y. Dec. 6, 2010) (finding New York partner rate of $657/hour to be reasonable); *Union of Orthodox*

---

[4] Instead, Plaintiffs submit affidavits of two supposed "experts," Andre E. Jardini, Esq. ("Jardini"), and William H. Shawn, Esq. ("Shawn").   (*See* Affidavit of Mark R. Thierman in Support of Plaintiffs' Opposition to Defendant's Motion for Attorneys Fees, dated Jan. 24, 2011 (Dkt. 52), Ex. C (Declaration of Andre E. Jardini in Support of Opposition to Citigroup Global Markets Motion For Attorney Fees and Costs) ("Jardini Report"), Ex. D (Expert Report of William H. Shawn) ("Shawn Report").)  Jardini states that he is licensed to practice law in California, and has practiced there for 32 years.  (Jardini Report, at 1.)  According to his declaration, however, he has never practiced in New York (*id.* at 1-3), suggesting that he may not be in a position to opine on reasonable New York rates.  Shawn is licensed to practice in the District of Columbia and has worked at various firms in Washington D.C.  (Shawn Report, Ex. 6.)  Although he claims to have "worked on a number of complex matters involving the [firm's] New York office and its partners and associates" (*id.*, at ¶ 3), he offers no empirical basis for his opinion as to reasonable rates in New York.  (*See also infra* at 18.)

*Jewish Congregations of America*, 665 F. Supp. 2d at 437 (finding New York partner rate of $735/hour to be reasonable); *Rozell v. Ross-Hoist*, No. 05 Civ. 2936, 2008 WL 2229842, at *14 (S.D.N.Y. May 29, 2008) (finding that, in employment action, partner billing rate of $600/hour for work performed in 2006-2007 was reasonable); *see also Miele*, 831 F.2d at 409 (holding that court may rely on its own knowledge of prevailing rates in community to determine reasonable hourly rates).[5]

Working directly with Shaulson, in the New York office, were associates Michael Cole, Esq. ("Cole"), Melissa Kelly, Esq. ("Kelly"), Joy Grese, Esq. ("Grese"), and Geeta Malkani, Esq. ("Malkani"), all of whom specialized in labor and employment law.  The bulk of the associate work on the matter was initially performed by Cole, with Kelly increasing her hours on the matter after Cole left the firm in March, 2010.   (*See generally* Shaulson Aff., Ex. B.)  When Kelly then went on maternity leave, Grese became more involved.  (Shaulson Reply Aff., at ¶ 15.)  Together, the work of these three attorneys – Cole, Kelly, and Grese – accounted for most of the associate time incurred on the case.  The role of the fourth New York associate –

---

[5] The only other partner who billed time on the matter was Rebecca Eisen, Esq. ("Eisen"), a Labor and Employment Partner in Morgan Lewis' San Francisco Office, but time records show that Eisen was consulted for only 1.7 hours.  (Affidavit of Samuel S. Shaulson in Support of Defendant's Reply Memorandum of Law in Further Support of Motion for Attorneys' Fees and Costs, dated Feb. 14, 2011 ("Shaulson Reply Aff.") (Dkt. 56), at ¶ 10.)  Eisen graduated from the University of San Francisco School of Law in 1980 and charged CGMI $582.93/hour for her time.  (*Id.*)  Given her 30 years of experience, the Court also finds her rate to have been appropriate.  *See, e.g. May v. Metro. Life Ins. Co.*, No. Civ. 03-5056, 2005 U.S. Dist. LEXIS 17783, at *9-11 (N.D. Cal. Apr. 7, 2005) (in 2005 case, finding $450/hour to be reasonable rate for partners practicing labor and employment law in the San Francisco market); *see also Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221 (EMC), 2011 U.S. Dist. LEXIS 39832, * 51 (N.D. Cal. Apr. 7, 2011) (accepting $675/hour and $800/hour as reasonable rates for experienced partners.)

Malkani – was far more limited; she contributed a modest amount of time to the matter, researching discrete issues.  (*See* Shaulson Reply Aff., at ¶ 13.)

Cole graduated from Northwestern University School of Law in 2003.  (Shaulson Aff., at ¶ 9.)  Prior to his association with Morgan Lewis, he had clerked for the Honorable Peter W. Hall, of the Second Circuit, and the Honorable Kevin T. Duffy, of this Court.  (*Id.*)  CGMI was charged the discounted rate of $403.75 per hour for Cole's time.  (Shaulson Reply Aff., at ¶ 16.)  Kelly has been associated with Morgan Lewis since her graduation from New York University of Law in 2007.  (Shaulson Aff. at ¶ 10.)  CGMI was charged the discounted rate of $297.50 per hour for Kelly's time for the duration of this case, although, for a reason that has not been explained, she was billed at the rate of $298.35 per hour for the single month of March, 2010.[6]  (Shaulson Reply Aff., at ¶ 16.)  Grese graduated from Columbia Law School in 2005, and billed her time at the discounted rate of $283.51 per hour, which was increased in January, 2010, to $317.50 per hour.  (*Id.*; Shaulson Aff., at ¶ 11.)  Malkani graduated from Rutgers University Law School in 2008, and initially billed at the discounted rate of $297.50 per hour, which was then slightly *decreased*, in November 2009, to $291.85 per hour.  (*Id.*)

All of these negotiated rates were within a reasonable range for the relevant market, given these associates' levels of experience in labor and employment law and the nature of the work performed.  Certainly, Kelly's rates (of $297.50 and $298.35/hour), Grese's rates (of $283.51 and $317.50/hour), and Malkani's rates (of $291.85 and $297.50) fall within the range of junior associate rates that have been accepted in recent years by this Court, for similar

---

[6] While CGMI should have explained this one-month aberration, the Court notes that the difference between these rates is less than one dollar per hour, and is immaterial to the Court's evaluation of reasonableness.

services, in the New York City market. *See, e.g., Mugavero v. Arms Acres, Inc.*, No. 03 Civ.

05724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (noting that, in this district,

"'rates for associates have ranged from $200 to $350, with average awards increasing over

time.'" (quoting *Vilkhu v. City of New York*, No. 06 Civ. 2095 (CPS), 2009 WL 1851019, at *4

(E.D.N.Y. June 26, 2009)).  While Grese's rate was increased during the course of the litigation,

she was more senior than Kelly, and the adjustment of her rate was reasonable for her level of

experience.  Similarly, while Cole's billing rate of $403.75/hour was higher than the others'

rates, he was more senior than the other associates, and his additional experience justified his

higher rate.

      Finally, two associates in Morgan Lewis's Chicago office billed some time to this matter.

Associates Kevin B. Dreher, Esq. ("Dreher") and Michael F. Derksen, Esq. ("Derksen") were

reportedly brought into the case to research and analyze particular issues related to the Federal

Truth in Lending Act, 15 U.S.C.A. 1601 ("TILA"), because "TILA is an area of law into which

employment lawyers do not typically delve, and [these attorneys] were well-versed in dealing

with such issues."  (Shaulson Reply Aff., at ¶ 12.)  Dreher graduated from the University of

Illinois College of Law in 2002, and billed at the rate of $318.75 per hour, which was increased

to $325.20 per hour in November, 2009.  (*Id.*, at ¶ 16; Shaulson Aff., at ¶ 11.)  Derksen

graduated from the University of Chicago School of Law in 2008, and billed at the rate of

$204.00 per hour, which was increased to $220.97 per hour, also in November, 2009.  (*Id.*)

Based on this Court's review of decisions from the Northern District of Illinois, where these

attorneys practiced, their negotiated billing rates (within the range of approximately $200 to

$325 per hour) were also reasonable.  *See, e.g., Webb v. CBS Broad., Inc*., Case No. 08 C 6241,

2010 U.S. Dist. LEXIS 106647 (N.D. Ill. Oct. 5, 2010) (finding associate rate of $275/hour in a

general litigation matter to be reasonable); *Holmstrom v. Metro. Life Ins., Co.*, Case No. 07-CV-6044, 2011 U.S. Dist. LEXIS 58766, *19-21 (N.D. Ill. May 31, 2011) (in employment action, finding rate of $375/hour to be appropriate for attorney who graduated in 2004).

        2.      **Legal Assistants and Other Staff Rates**

Various other professionals at Morgan Lewis also worked on this matter.  Two New York office paralegals, Ivy Hamlin ("Hamlin") and Gabriel Preda ("Preda"), billed at $196.35 and $208.46 per hour, respectively.  (Shaulsen Reply Aff., at ¶ 16.)  A managing clerk in the New York office, Charles Calvaruso ("Calvaruso"), billed at $205.28 per hour, and filing and record clerks in the New York office (Albert Antenor ("Antenor"), Joseph Calabrese ("Calabrese"), and J.B. Rosenblum ("Rosenblum")) all billed at $120.49 per hour.  (*Id.*)  CGMI, however, offers no justification for these billing rates.

In the New York City market, it may now be reasonable to charge rates in the $200-per-hour range for the work of paralegals, *see, e.g., Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC*, No. 05 Civ. 6757, 2009 WL 466136 (LTS) (MHD), at *6 (S.D.N.Y. Feb. 25, 2009) (accepting as reasonable paralegal rates of $205 and $235/hour), at least where paralegals have specialized expertise.  Yet, in the absence of any showing that warrants billing the time of Hamlin and Preda at rates that were on par with the rates charged by Morgan Lewis for one of its Chicago associates (*see supra* at 12-13 (discussing Derksen billing rates of $204.00 and $220.97)), this Court recommends reducing the rates charged for these paralegals to $100 per hour.  *See  Malletier v. Apex Creative Intern. Corp.*, 687 F. Supp. 2d 347, 62 (S.D.N.Y. 2010) (reducing hourly rate for paralegals to $100 because fee applicant provided no explanation for their billing rates); *Yea Kim v. 167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *9 (S.D.N.Y. Jan. 12, 2009) (reducing paralegal's billing rate to $50/hour due to

plaintiff's failure to provide any information regarding their expertise or experience).  Similarly, and in keeping in line with the accepted rates in this district for clerical work, the Court also recommends lowering the rates charged for Calvaruso, Antenor, Calabrese, and Rosenblum to $50 per hour.  *See Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC*, No. 05 Civ. 6757, 2009 WL 466136 (LTS) (MHD), at *6 (S.D.N.Y. Feb. 25, 2009) (reducing managing clerk and clerk rates to $50/hour); *see also Rahman v. The Smith & Wollensky Restaurant Group, Inc.*, No. 06 Civ. 6198 (LAK) (JCF) 2009 WL 72441, at *8 (S.D.N.Y. Jan. 7, 2009) (reducing rate for clerical tasks to $50/hour).

Outside of New York, CGMI was charged $198.67 and $174.04 per hour for the work of a paralegal manager, Denise Dellaratta ("Dellaratta") and a paralegal, Tom Ito (Ito"), respectively, in Morgan Lewis's Philadelphia office.  (*Id.* at ¶ 16.)  As with the New York paralegals, CGMI has not made any showing that these paralegals possessed specialized knowledge or engaged in tasks that were more than administrative in nature, and, without such a showing, their rates appear high for the Philadelphia market.  *See Alexander v. NCO Fin. Sys.*, No. 11-401, 2011 U.S. Dist. LEXIS 64211, *16-17 (E.D. Pa. Jun. 16, 2011) (acknowledging that the reasonable rate for general paralegals in the region to be $70-90/hour, but finding $150-$165/hour to be reasonable rate for paralegals with specialized knowledge); *Carpenters Pension & Annuity Plan v. Grosso*, No. 07-5013, 2009 U.S. Dist. LEXIS 69020, at *19 (E.D. Pa. Aug. 6, 2009) (approving paralegal rate of $90/hour in labor and employment case).  In the absence of evidence that Dellaratta and Ito performed specialized services justifying a higher rate than those approved for ordinary paralegal work in employment cases, I recommend reducing their rates to $90 per hour.

14

For the same reasons, and as CGMI again has made no showing of the specialized nature of the work performed, the Court also recommends lowering the rate for Karen Xander, a paralegal in the Pittsburgh office, from the requested $196.35 per hour to $90 per hour. *See Lining v. Temp. Pers. Servs.*, No. 07-01724, 2008 U.S. Dist. LEXIS 60930, at *20 (W.D. Pa. Jul. 31, 2008) (finding paralegal rate of $80/hour to be reasonable rate); *but see Choike v. Slippery Rock Univ.*, No. 06-622, 2007 U.S. Dist. LEXIS 78148, *14-15 (W.D. Pa. Oct. 22, 2007) (accepting rates of $150/hour, $125/hour and $160/hour as reasonable rates for complex litigation paralegal work in Pittsburgh).

## B.    Reasonableness of Hours

Of the nearly $422,000 invoiced by Morgan Lewis to CGMI through February 11, 2011, in connection with the *Banus* matter, CGMI, as noted above, seeks an award of $366,956.71 for fees and costs.  (Shaulson Reply Aff., at 21.)  As explained by Clark, CGMI is only seeking fees and costs related to the federal court litigation.  (Clark Aff., at ¶ 13.)  Thus, CGMI states that it has omitted from its application the fees and costs incurred by Morgan Lewis in defending it against an unfair labor practice charge asserted by Plaintiffs, seeking confirmation of Banus's arbitration award in New York State court, coordinating with counsel representing CGMI in arbitrations brought against the named Plaintiffs, and opposing the appeal filed by Plaintiffs in the Second Circuit.  (*Id.*)[7]

---

[7] Despite Clark's representation that CGMI is not seeking reimbursement for fees related to enforcing the arbitration award in state court (*see* Clark Aff., at ¶ 13), CGMI's fee application does include one attorney time entry that plainly seems to describe such work.  (*See* Shaulson time entry of Oct. 27, 2009, of .8 hours, for "[w]ork on outline for enforcement of FINRA proceedings.")  In light of Clark's affidavit, I recommend that this time entry be excluded from any fee award made by the Court, and that Shaulson's time be reduced, accordingly, from 182.30 hours to 181.50 hours.

With respect to the fees and costs for which CGMI *is* seeking an award, the Court first notes that CGMI appears to have had a rigorous system in place for the review of counsel's bills. According to Clark, who oversaw the work of outside counsel, the legal invoices for this matter went through a two-step review process.  (*Id.* at 11.)  A member of Clark's staff conducted an initial review, and then monthly bills in excess of $5,000 were sent to Clark, himself, for review and approval.  (*Id.* at 12.)

Second, the Court notes that, despite Plaintiffs' contentions to the contrary (*see* Plaintiff's Opp., at 8), this litigation appears to have been appropriately staffed, such that the submitted bills do not inherently suggest an undue duplication of labor.  As noted above, aside from 1.7 hours billed by a partner in Morgan Lewis' San Francisco office (*see* n.5, *supra*), Shaulson was the only partner who billed time on the matter.  (Shaulson Aff., Ex. B; Shaulson Reply Aff., Ex. A.)  Shaulson, as the sole partner and lead attorney on the case, charged for approximately 182.3 hours of work on the case, about 20 percent of the 894.2 hours billed on the matter.  (*Id.*)  Further, up until the filing of the motion to dismiss on January 11, 2010, New York labor and employment associates Cole and Kelly performed nearly 90 percent of the associate work in the case.  (*Id.*; *see also* Shaulson Reply Aff., at ¶ 11.)  With little assistance from other attorneys, these two associates drafted the papers filed by CGMI on its motion to dismiss, the opposition to Plaintiffs' Rule 56(b) motion, and the opposition to plaintiff Alvarez's motions to stay the arbitration and vacate the arbitration award.  (Shaulson Reply Aff., at ¶ 14.)  Further, only one associate, Grese, worked on CGMI's fee application.  (*Id.*, at ¶ 15.)[8]  Although

---

[8] Of the cumulative 894.2 attorney hours for which CGMI seeks reimbursement, Shaulson worked 182.3 hours, Cole worked 304.9 hours, Kelly worked 231.9 hours, and Grese worked 106.8 hours.  (*See* Shaulson Aff., at Ex. B; Shaulson Reply Aff., at Ex. A; Defendant's Response to Plaintiffs' Objections to New Evidence, dated Mar. 23, 2011 (Dkt. 61), at Ex. A.) All other attorneys on the matter, including one partner and three associates, worked a total of only 39.4 hours.  (*Id.*)

these three associates performed most of the associate work on this matter, it appears that Shaulson reasonably brought in other timekeepers, as necessary, to assist with research and to keep an appropriate balance between partner and associate time billed.  Finally, as evidenced by CGMI's fee application, CGMI utilized paralegals and clerks to carry out tasks not appropriately performed by counsel.

Third, the Court accepts that the number of claims raised by Plaintiffs, the seriousness of the potential consequence to CGMI if any of those claims were to succeed, and the haphazard manner in which Plaintiffs pressed their arguments necessitated a vigorous and comprehensive effort by CGMI's counsel to challenge this lawsuit.  Plaintiffs filed this case as a putative class action; amended their pleadings twice; and sought not only to invalidate their contracts with CGMI on a number of grounds, but also to stay a pending arbitration between the parties, to set aside an arbitration award, and to invalidate the underlying arbitration proceedings.  (*See* Class Action Complaint For Recision of Contract and Declaratory Relief, dated Aug. 12, 2009 (Dkt. 1); First Amended Class Action Complaint For Recession (*sic*) of Contract and Declaratory and Statutory Relief, dated Oct. 16, 2009 (Dkt. 3); Second Amended Class Action Complaint For Recession (*sic*) of Contract and Declaratory Relief, dated Nov. 30, 2009 (Dkt. 11); Petition to Stay Arbitration, dated Apr. 7, 2010 (Dkt. 33); Motion to Vacate Arbitration Award Pursuant to 9 USC § 10, dated Apr. 7, 2010 (Dkt. 34).)  Plaintiffs also sought discovery, even in the face of a motion to dismiss.  (Plaintiff's Motion Under Rule 56(F), dated Feb. 15, 2010 (Dkt. 19).)

The Court found that Plaintiffs' entire action was "baseless" and brought "in what quite plainly was a studied effort to prevent collection of the debts [Plaintiffs] owed through the arbitration process."  (*Banus* I, 2010 WL 1643780, at *12.)  Viewed in light of Plaintiffs' "kitchen-sink" pleadings and bad faith litigation tactics, the large number of hours spent by

17

CGMI's counsel in defending the action becomes more understandable.  While Plaintiffs attempt to support their arguments of over-staffing and excessive hours with the reports of two purported "experts" (*see supra* at n.4), the opinion of neither is at all compelling, given that neither appears to have had any prior connection to this case, and neither discusses the pleadings and briefing submitted by Plaintiffs over the course of this litigation.  (*See* Jardini Report; Shawn Report.) Indeed, one of these purported experts makes plain that he never even reviewed Plaintiffs' own filings in reaching his conclusion that the fees and costs requested by CGMI were unreasonable (Jardini Report, at ¶ 21), and the other merely states that he reviewed the case docket (*see* Shawn Report, at 11).

Fourth, as even one of Plaintiffs' purported experts admits, "[t]he motion to dismiss was well researched and written."  (Jardini Report, at ¶ 33.)  The briefs submitted by CGMI concisely and effectively addressed the myriad claims asserted by Plaintiffs.  The attorneys' work was also successful; CGMI won its motion to dismiss, as well as its motion for attorneys' fees.  The nature and quality of the work performed by Morgan Lewis, together with its degree of success in defending CGMI against Plaintiffs' lawsuit, support CGMI's fee request.

Nonetheless, the Court's review of Morgan Lewis's billing records leads to the conclusion that the time spent by counsel should, at least to some extent, be reduced.  While this is not a case where counsel's reported time "shocks the conscience," as Plaintiffs would have it (*see* Plaintiff's Opp., at 4), the number of hours spent in briefing certain motions was unquestionably high, and certain of counsel's time entries are too vaguely worded to warrant a full recovery for the work performed.

For example, Morgan Lewis's time records suggest that counsel spent approximately 360 hours working on the motion to dismiss (exclusive of the reply), including conferring,

researching legal issues, and preparing the written motion papers.  (Shaulson Aff., at Ex. B.)
This is the equivalent of a single attorney working on nothing but the motion for 40 hours a
week, for nine weeks – roughly two full months.  Even recognizing the breadth of the Second
Amended Complaint, to which the motion to dismiss was directed, this is a *very* substantial
amount of time.

Compounding the Court's difficulty in determining whether the hours spent on this
matter were excessive is the fact that many of counsel's billing records – particularly the time
entries made by Cole, who was apparently the primary draftsman of the motion to dismiss – do
not specify the nature of the particular work performed with respect to the motion papers being
prepared.  While his time entries are not deficient across the board,[9] Cole recorded 83.6 hours of
his time "drafting" the motion to dismiss, and 45.4 hours "revising" or "finalizing" the motion.
(Shaulson Aff., at Ex. B.)  Indeed, time entries by Cole that say nothing more than "Draft motion
to dismiss" or "Draft reply" are repeated verbatim multiple times in the presented time records,[10]
and many entries by Shaulson are similarly vague.[11]  Such entries are inadequate to enable the
Court to determine which portions of the papers, in particular, the attorneys were working on,

---

[9] *See, e.g.*, Cole time entry dated Aug. 29, 2009 ("Review case law regarding
consideration for promissory note and whether acceleration clauses constitute an unconscionable
penalty"); Sept. 2, 2009 ("Review and analyze case law re: res judicata and collateral estoppel
afforded to unconfirmed arbitration awards"); Oct. 28, 2009 ("Draft argument re: FINRA
13204").

[10] *See* Cole time entries recorded as "Draft motion to dismiss," dated 11/04/09, 11/05/09,
11/06/09, 11/07/09, 11/08/09, 11/09/09, 11/10/09, 11/11/09, 11/12/09, 11/13/09, 11/16/09 (two
entries), 11/17/09 (two entries), 11/18/09, 11/19/09 (two entries), 11/20/09, 11/24/09, and
2/4/10; *see also* entries recorded as "Draft reply," dated 2/23/10, 2/24/10, 2/25/10, 2/26/10, and
2/27/10.

[11] *See, e.g.,* Shaulson time entries recorded as "Revise motion to dismiss," dated 12/1/09,
12/2/09, 12/3/09, 12/4/09, and 1/11/10.

19

much less whether the expended time was reasonable for the work performed, or repetitive of work being performed by another timekeeper. *See, e.g., Clarendon Nat'l Ins. Co. v. Compuplan, LLC*, No. 03 Civ. 7966 (LAP) (KNF), 2006 U.S. Dist. LEXIS 88161, at \*20 (S.D.N.Y. Dec. 5, 2006) (time entries such as "draft documents" failed to describe adequately the work performed); *Williamsburg Fair Housing Comm. v. New York City Housing Authority*, No. 76 Civ. 2125 (RWS), 2005 U.S. Dist. LEXIS 19401, \*5 (finding time entry "outline reply brief" to be impermissibly vague); *Local 32B-32J v. Port Auth.*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (reducing amount of requested attorneys' fees because of vague descriptions in time records like "research and draft papers"). Although the amount of time spent by counsel in briefing motions may, in fact, have been reasonable, CGMI has not fully met its burden of demonstrating this. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984).

When submitted time records do not provide descriptions sufficiently detailed to enable the Court to determine the reasonableness of the expended time, courts in this Circuit have typically applied a percentage reduction – frequently in the range of 20 to 30 percent – to the claimed attorney hours, or at least to the hours at issue. *See, e.g., Kirsch*, 148 F.3d at 173 (affirming 20% fee reduction for vagueness and other deficiencies in attorney billing records); *Terminate Control Corp. v. Nu-Life Constr. Corp.,* 28 F.3d 1335, 1342-43 (2d Cir. 1994) (30% fee reduction for "lack of specific record keeping" was within the district court's discretion); *see also Trs. of the Bricklayers and Allied Craftworkers Local 5 N.Y. Ret., Welfare and Training Funds v. Helmer-Cronin Constr., Inc.*, No. 03 Civ. 0748 (MDF), 2005 U.S. Dist. LEXIS 40165, at \*15-16 (S.D.N.Y. Oct. 24, 2005) (20% reduction for vague entries that "fail to adequately describe the nature of the work performed"); *Local 32B-32J*, 180 F.R.D. at 253 (20% reduction for vague time entries); *Mr. & Mrs. B. v. Weston Bd. of Educ.*, 34 F. Supp. 2d 777, 782 (D.

Conn. 1999) (30% reduction where vague and compound time entries did not permit the court to determine the reasonableness of the time expended); *Rozell*, 576 F. Supp. 2d at 541 (finding that excessiveness of time billed on certain tasks warranted an across-the-board 15% reduction in hours submitted).  In this case, as the Court cannot determine the reasonableness of much of the time spent on the motion practice that dominated the litigation, I recommend that Morgan Lewis's requested fees be adjusted by a 20-percent reduction, across the board, "as a practical means of trimming fat" from CGMI's fee application.[12]  *Carey,* 711 F.2d at 1146.

In sum, I recommend that the Court award CGMI attorneys' fees in the amount of $279,963.22, calculated as follows:

**New York**

| | | | | | |
|---|---|---|---|---|---|
| Samuel Shaulson (partner) | $606.31/hr | x | 181.50 hrs | = | $110,045.27 |
| Michael Cole ('03 associate) | $403.75/hr | x | 304.9 hrs | = | $123,103.38 |
| Geeta Malkani ('05 associate) | $297.50/hr | x | 9.7 hrs | = | $2,885.75 |
| | $291.85/hr | x | 5.5 hrs | = | $1,605.18 |
| Melissa Kelly ('07 associate) | $298.35/hr | x | 18.4 hrs | = | $5,489.64 |
| | $297.50/hr | x | 213.5 hrs | = | $63,516.25 |
| Joy Grese ('08 associate) | $283.51/hr | x | 1.1 hrs | = | $311.861 |
| | $317.50/hr | x | 105.7 hrs | = | $33,559.75 |

---

[12] Plaintiff also argues that any fee award should be reduced under *Fox v. Vice*, No. 10-114, 2011 U.S. LEXIS 4182 (June 6, 2011).  In *Fox*, the Supreme Court held that, where a civil rights plaintiff had asserted both frivolous and non-frivolous claims, 42 U.S.C. § 1988 would permit a fee recovery by the defendant, only to the extent its fees would not have been incurred, "but for" the frivolous claims.  *Id.,* at *18.  Here, regardless of whether this holding applies to a fee award under 28 U.S.C. § 1927, there is no issue here regarding a mix of frivolous and non-frivolous claims.  The Court has dismissed *all* of Plaintiffs' claims as baseless and without merit.  (*Banus* I, 2010 WL 1643780, at *12.)  Although Plaintiffs argue that CGMI would have incurred fees and costs related to the arbitration, regardless of whether this case had been filed, CGMI does not seek fees incurred in arbitration or in enforcing any arbitration award.

| | | | | | |
|---|---|---|---|---|---|
| Gabriel Preda (paralegal) | $100.00/hr | x | 5.0 hrs | = | $500.00 |
| Ivy Hamlin (paralegal) | $100.00/hr | x | 8.9 hrs | = | $890.00 |
| Charles Calvaruso (managing clerk) | $50.00/hr | x | 0.3 hrs | = | $15.00 |
| Albert Antenor (clerk) | $50.00/hr | x | 0.8 hrs | = | $40.00 |
| Joseph Calabrese (clerk) | $50.00/hr | x | 4.1 hrs | = | $205.00 |
| J.B. Rosenblum (clerk) | $50.00/hr | x | 0.2 hrs | = | $10.00 |

**San Francisco**

| | | | | | |
|---|---|---|---|---|---|
| Rebecca Eisen (partner) | $582.93/hr | x | 1.7 hrs | = | $990.98 |

**Chicago**

| | | | | | |
|---|---|---|---|---|---|
| Kevin Dreher ('02 associate) | $318.75/hr | x | 8.5 hrs | = | $2709.38 |
| | $325.20/hr | x | 2.2 hrs | = | $715.44 |
| Michael F. Derksen ('08 associate) | $204.00/hr | x | 6.5 hrs | = | $1,326.00 |
| | $220.97/hr | x | 5.3 hrs | = | $1,171.14 |

**Philadelphia**

| | | | | | |
|---|---|---|---|---|---|
| Denise Dellaratta (paralegal manager) | $90.00/hr | x | 1.2 hrs | = | $108.00 |
| Tom Ito (paralegal) | $90.00/hr | x | 3.3 hrs | = | $297.00 |

**Pittsburgh**

| | | | | | |
|---|---|---|---|---|---|
| Karen Xander (paralegal) | $90.00/hr | x | 5.1 hrs | = | $459.00 |
| | | | **sub-total**: | | **$349,954.02** |
| | | | less 20%: | | ($ 69,990.80) |
| | | | **TOTAL:** | | **$279,963.22** |

22

C.     <u>Costs</u>

CGMI also seeks reimbursement for costs expended during its defense of this action, in the amount of $14,928.20.  Computerized research fees comprise the bulk of this cost request. (*See* Shaulson Aff., at Ex. B.)  As reported by Morgan Lewis, CGMI researched "at least 27 different topics," due to the range of claims asserted by Plaintiffs.  (Shaulson Reply Aff., at ¶ 7.) Under the circumstances of this case, in which Plaintiffs indeed raised a host of legal issues, relating to numerous areas of law and implicating both federal and state statutes, the stated legal research costs are reasonable.  CGMI also seeks reimbursement for copies made at a rate of seven cents per page, for modest rail fees ranging from $2.25 to $4.50, and for various overnight courier services ranging from $6.36 to $31.75.  The Court also finds these more minor costs to be reasonable.  (*See supra* at 6.)

Overall, this Court has reviewed the costs sought to be recovered by CGMI and finds them to be reasonable.  Accordingly, the Court recommends a cost award to CGMI in the amount it requested, $14,928.20.

<u>**CONCLUSION**</u>

For the reasons set forth above, I recommend that, on CGMI's fee application (Dkt. 49), Plaintiffs' counsel, Mark R. Thierman, Esq., be ordered to pay CGMI a total of $279,963.22 in attorneys' fees and $14,928.20 in costs.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, United States Courthouse, 500 Pearl Street, Room 1310, New York, New

23

York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

Room 525, New York, New York 10007. Any requests for an extension of time for filing

objections must be directed to Judge Kaplan. FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW. See *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE*

*AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968

F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988);

*McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      September 13, 2011

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies To:

The Honorable Lewis A. Kaplan

All parties (via ECF)

24